HECKMAN v. HECKMAN.

[No. 29,413. Filed May 31, 1956.]

474

*John R. Walsh, DeArmond, Booram & DeArmond,* and *Lawrence Booram* (of counsel), of Anderson, for appellant.

*Robert L. Shearer,* of Anderson, for appellee.

ARTERBURN, J.—This case comes to us on transfer from the Appellate Court under §4-209, Burns' 1946 Repl., by reason of four Judges of said court failing to concur, all Judges participating in the consideration of the appeal in that court.

The appellee was granted a divorce from appellant after a trial of the issues presented by her complaint charging appellant with cruel and inhuman treatment of appellee. The court also awarded appellee alimony in the amount of $8000.00, payable in semi-annual installments of $1000.00 each, custody of the female child of the parties and $15.00 per week for the support thereof, attorney fees in the amount of $725.00, and costs.

Appellant's motion for a new trial specifies insufficiency of the evidence to sustain the court's finding, that the finding is contrary to law, and that the amount of alimony awarded is too large.

The evidence favorable to appellee tends to establish the following facts: The parties were married on June 10, 1948. Appellee then had the custody of two children by a previous marriage. One child, a daughter, aged five or five and a half years at the time of the trial, was born to the union of these parties. At the time of their marriage appellant held an elective position in Madison County but he was defeated for renomination in the May Primary of 1948, and his term of office expired December 31, 1948.

At the time of their marriage, appellee owned a one-half interest in a house on 15th Street, a one-half interest in a business building on Main Street, a one-half interest in a house on West 10th Street, all in Anderson, and certain stock in an investor's syndicate. Appellant's assets consisted of an automobile, stock in a grain company worth about $200.00, some surveying instruments, and a truck. The house on 15th Street, owned in equal shares by appellee and her sister, was sold in 1950 for $8500.00, appellee's share being $4250.00. She became indebted to her sister and her half interest in said business property on Main Street was transferred to her sister and appellee, in the adjustment, acquired the whole interest in the West 10th Street property. This latter mentioned property was thereafter disposed of by appellee in a sale and trade whereby she acquired two small houses, which she later sold on contract, realizing an equity of $8000.00.

Appellant and his father and mother engaged in a partnership and thereafter, in a new arrangement, a partnership was formed for a general construction busi-

ness, the partners being appellee, appellant, and his father and mother. Appellant put into the partnership his automobile, surveying equipment, truck, and some small tools. Appellee put $4000.00 into the partnership, which she acquired as a loan, using her interest in the said business property as security. Appellant's father and mother put into the partnership an amount which "matched" the investment of appellant and appellee. After the organization of the partnership, the date not appearing, appellant told appellee that the "bank balance" was overdrawn $2000.00 and that they needed money to meet the payroll. Appellee sold her said stock, which cost her $7500.00, for $6000.00 and put that amount into the capital of the partnership. Appellant and appellee pledged their insurance for a loan of $1900.00 which was also invested in the partnership.

In the Fall of 1951, the parties went to Atterbury where appellant engaged in construction work. While there, appellee and her sister put up the said 15th Street property for sale and appellant told appellee that he and his father did not get along very well and that he thought it a good idea if she would buy out his father's interest in the business, apparently proposing that she use the money to be realized from said sale for such purpose. Appellee ascertained that the father did not want to quit the business and she informed appellant that she wouldn't buy the father's interest unless "he actually wanted us to." From then, appellee testified, appellant turned against her and objected to everything she did.

They returned to Anderson and decided that the partnership should remodel appellee's said 10th Street property at a cost of $8900.00. When the remodeling was finished there remained $3000.00 of unpaid obligations.

Dissolution of the partnership was begun in 1952 and completed in 1954. Said $3000.00 for unpaid obligations was deducted from appellee's capital contributions to the partnership and, upon final dissolution, she received $2100.00 out of the remaining cash assets of the partnership.

Appellee drew against the capital amount of the partnership for her "grocery money" and whatever money appellant drew was also drawn from the capital account of said partnership. Such arrangement continued until "there wasn't anything left from which to draw." The partnership encountered financial difficulties, creditors came to the home of the parties, and a bitterness developed between appellant and his father. In July or August of 1952 appellant told appellee he could no longer talk to the creditors and that he was going to North Carolina to work at a job paying $280.00 a week. He told appellee that she could take care of the creditors and help his father sell the equipment. From the time appellant went to North Carolina until January 1, 1953, he sent appellee $680.00, but she paid out in excess of that amount on appellant's obligations.

While working in North Carolina, appellant came home week ends and appellee sought help in getting the business settled but appellant "wouldn't stay to explain what he owed, to whom, and what for" and appellee said, "we had some difficulties over that." Appellant told appellee he had not been happy during their marriage, that appellee was a year and a one-half older than he, that he wanted a son and didn't "feel" that her health would permit the having of more children, that "Vive" (the daughter) was nice, but he wanted a boy and "to find some one else before he became too old"; and that appellee should see a named attorney and

file for a divorce. Appellee said she was "completely dumbfounded" by his statement that he wanted a son by a younger woman and that she "would get a divorce" if that was what appellant wanted. That appellant liked to travel and didn't want to stay home.

Appellee testified that appellant decided it would be a good idea if his mother adopted the daughter and they could see the child when they wanted to and "wouldn't have to be bothered." That around Thanksgiving 1952 he, a Marine reservist, reenlisted in the Marines without her knowledge and she did not learn of it until around Christmas of 1952; that while in the service he sent home $75.00 a month for support, gave the daughter a coat and shoes, and gave appellee $50.00 at one time, and $100.00 on another occasion.

Appellee further testified that appellant one time became angry with appellee's youngest son, hit him on the back and knocked his glasses off; that she objected and he became angry, went out, and returned about 10:00 P.M. with evidence that he had been drinking; that he took the daughter, then eight months old, wrapped in a shawl, out into the rain. He refused to tell appellee where he was going and she followed him; that he took the baby into three different bars and finally brought the child home at appellee's behest.

In support of his specification of insufficiency of the evidence to sustain the finding, appellant confines himself to the point that his reenlistment in the Marines without first informing appellee or seeking her consent is not cruel and inhuman treatment. In considering the sufficiency of the evidence to sustain the finding of the court, a fragment, part or portion of the evidence is not plucked from the whole and appraised alone, but all the evidence, together with all the permissible and reasonable inferences deductible

therefrom, is surveyed to determine the ultimate facts and circumstances established thereby favorable to the decision of the trial court. A reversal of a judgment predicated upon a finding results only when there exists no competent evidence to support such finding.

The trial court has before it, within its sight and hearing, the physical presence of the parties and oftimes their children. It hears their testimony, notes their actions and reactions, observes their sincerity, emotions, inflections and tones of voice, apparent state of health, and experiences the tenseness of the human drama enacted there within the confines of the court room. The appellate tribunal, on the other hand, has before it only the cold, written record. It sees only words, phrases, sentences, questions, answers, and exhibits. It is without the authority to weigh the evidence and determine only that the requisite principles of law have been observed and duly applied, and that justice has been fairly and impartially administered.

Cruel and inhuman treatment is a relative term, and depends upon the circumstances of each particular case. *Stewart* v. *Stewart* (1911), 175 Ind. 412, 94 N. E. 564. It may consist of a series of wrongs, no one of which, in itself, would be grounds for a divorce. When the evidence here recorded most favorable in support of the trial court's finding is considered in its entirety, and viewed as a composite whole, there appears a general attitude by appellant of unconcern and lack of responsibility as to his marital obligations and his natural duties as a father and a husband. We think the evidence, and the facts and circumstances established thereby, was of sufficient strength to authorize the court, in its difficult task of weighing the evidence, to draw the reasonable inference that such unwarranted acts and conduct of appellant so adversely affected ap-

pellee, both mentally and physically, as to constitute cruel and inhuman treatment of her, within the definition of that term by our courts.

Appellant insists that the evidence establishes that appellant's marital offences were condoned by appellee.

Condonation involves the intent of the injured party, with knowledge of the offences, to forgive the antecedent matrimonial offences by cohabitation upon condition that there shall be no repetition thereof.

We quote, in part, from 17 Am. Jur., Divorce and Separation, §210, page 257:

> "Cruelty as a ground for divorce is generally a course of conduct rather than a single act. The rule is that sexual cohabitation after acts of cruelty cannot be considered as condonation in the sense in which it would be after an act of adultery. The effort to endure unkind treatment as long as possible is commendable; and it is obviously a just rule that the patient endurance by the wife of her husband's continuous ill-treatment should never be allowed to weaken her title to relief. However, it is recognized in a number of cases that voluntary marital cohabitation after acts of cruelty on the part of one spouse which would entitle the other to a divorce will constitute condonation *as long as the offense is not repeated.*" (Our emphasis).

We have above stated that the evidence shows, as one of the phases of his cruel treatment of appellee, that appellant exhibited an unconcern and irresponsibility as to his marital obligations and his natural duties as a father and husband. Such offensive conduct was accentuated, repeated and persevered in by his unannounced reentry into the military service. Such act, done by appellant in secrecy, and without any regard for the rightful feelings, expectancy,

and devotion of appellee and the child, certainly demonstrated his total lack of the conjugal love, respect, and confidence to which appellee, as his mate, was entitled. So if it be conceded that appellee's cohabitation with appellant continued to Christmas of 1952, she did so in ignorance of his betrayal of her confidence and, after becoming apprised thereof, she ceased physical marital relationship with him. Cohabitation is not condonation of cruelty unless done with intent to forgive and such intent was a question of fact for the court's determination. Under the facts and circumstances here made apparent by the evidence, we cannot say that the court erroneously concluded that the general presumption of condonation from continued cohabitation was overcome by such facts and circumstances and destroyed the probability from which such presumption arose.

Appellant asserts that the alimony awarded by the court was too large and amounted to an abuse of its discretion so that its decision, in that regard, was contrary to law. The amount of alimony proper to be awarded in a divorce action is within the sound discretion of the court dependent upon the facts and circumstances established by the evidence in each particular case. The evidence in this case fails to show a basis for the allowance made by the court. The parties acquired no property through their joint efforts. Appellee appears to have an income from the two pieces of property she obtained by the trade of her house on West 10th Street and she earns an annual salary of approximately $3600.00 as a teacher. From the evidence it appears that appellant's assets consist only of a contemplated joint enterprise venture wherein his earnings will be $125.00 per week and a share of the profits, if any, there being no evidence as to the proportion or percent of such share or the amount of any

possible or anticipated profits; and certain grain elevator stock having a par value of $400.00. He possesses two insurance policies which are pledged as security for a loan on which there is a balance of $1500.00, and his equity therein at the time of the trial was approximately $500.00. Appellee is jointly obligated on said loan.

Appellant, out of his said income and stock, is obligated to support said child, as ordered, pay on the insurance policy loan, pay $62.00 per month on the purchase of appellee's automobile, and, presumably, must support himself. In addition, under the judgment herein appealed from, he is obligated to pay $1000.00 each six months on the alimony award of $8000.00, attorney fees in the amount of $725.00, and the costs of the action.

The courts have a wide discretion in the adjustment and determination of the property rights of the parties. While the trial court determined, and we think correctly so, that appellant was guilty of cruel and inhuman treatment of appellee, but we do not comprehend that the evidence was of such a nature as to warrant the alimony award fixed by the trial court.

Appellee's complaint alleged that appellant caused her to lose "in excess of ten thousand dollars because of his investments." We fail to perceive wherein the evidence supports such charge. The evidence indicates that the appellee lost in the neighborhood of $8000.00 by her investments in the partnership. But appellee's testimony was that she went into the partnership voluntarily with the hope that she would be successful. Where there appears no evidence that a husband deceived a wife in investments made by her or that he asserted any improper influence over her to induce her to make an investment resulting in a loss to her, the loss is not a factor to be used in adjusting property rights between the parties. It would be, of

course, a permissible inference that appellee, as the wife of appellant, held the natural desire to assist her husband by investment in the partnership affording him the opportunity for an income. All of appellant's assets, including the loan on his insurance policies, were also invested in the concern. Unfortunately, however, the partnership project ended in failure and with it the contributions of the parties. Only appellee received any return, that being the $2100.00 paid her by appellant's father. Under such circumstances, the allowance of alimony to appellee on the theory that she is entitled to reimbursement from appellant for her lost investments appears without foundation in the evidence. In that particular we feel that the amount of alimony awarded appellee was excessive and constituted an abuse of the discretion vested in the trial court. Acts 1873, ch. 43, §20, p. 107, being §3-1217, Burns' 1946 Replacement; *Shula* v. *Shula* (1956), 235 Ind. 210, 132 N. E. 2d 612; *Dissette et al.* v. *Dissette* (1935), 208 Ind. 567, 196 N. E. 684; *DeWitt* v. *DeWitt* (1951), 120 Ind. App. 704, 96 N. E. 2d 351.

That part of the judgment granting appellee a divorce from appellant and awarding her the custody of the minor child of the parties and providing for its support by appellant, and for attorney fees, is affirmed. That portion of the judgment relating to the awarding of alimony is reversed with instructions to grant a new trial, as to the issue of alimony only, and for such further proceedings as may be taken consistent herewith.

Achor, J., not participating.

Landis, C. J., and Emmert, J., concur.

Bobbitt, J., concurs in result.

NOTE.—Reported in 134 N. E. 2d 695.