## MAXWELL *v.* MAXWELL.

[No. 29,938. Filed April 13, 1960. Amendment to petition for rehearing denied May 20, 1960.]

*Hagemier & Shannon,* of Indianapolis, for appellant.

*Grafton J. Kivett,* of Martinsville, and *Albert W. Ewbank,* of Indianapolis, for appellee.

PER CURIAM.—This case comes to us on petitions by both appellant and appellee to transfer from the Appellate Court under §4-215, Burns' 1946 Replacement. See 158 N. E. 2d 796 for opinion of the Appellate Court.

This was an action for divorce brought by the appellant, in which appellee filed his cross-complaint for divorce and restoration of certain real property previously settled upon appellant by appellee.

Judgment was for appellee upon his cross-complaint, granting him an absolute divorce from appellant and custody of their child, and the court appointed a commissioner to reconvey the property formerly settled upon appellant to appellee and awarded appellant the sum of $11,500 as her interest in the adjustment of property rights.

Because of the result we have reached, the only question which need be considered by this court is whether or not the decision of the trial court is sustained by sufficient evidence.

The burden was upon appellee to establish the allegations of his cross-complaint which, inter alia, were that the plaintiff was guilty of cruel and inhuman treatment in this, to-wit:

"a. The plaintiff is possessed of a high and ungovernable temper, which is uncontrollable, that at such times she demands unreasonable attention and care which cannot under the circumstances be afforded to her.

"b. That on numerous occasions the plaintiff has told this defendant that she did not want to live with him longer and has asked him to leave.

"c. That the plaintiff has threatened to stab this defendant with a sharp instrument which she then held in her hand.

"d. That the plaintiff has repeatedly associated herself with other men and that said associations with other men were before said separation and have been since said separation. That because of these facts it is now impossible for plaintiff and defendant to live together as husband and wife."

Considering the evidence most favorable to appellee, the record discloses that appellee left home on June 3, 1956 and appellant filed her complaint herein on June 7, 1956, appellee then filing his cross-complaint on October 27, 1956.

The record further shows that appellee testified that on October 31, 1956 he and a friend were driving along a country road when they saw two cars parked in the driveway where an old house had been torn down. Appellee testified that one of the cars belonged to appellant; that while he recognized the person in the other car, he "backed his automobile out and drove off in front of us." Appellee further testified that appellant was "cold and quarrelsome" and that at one time she threw a cup of coffee at him. He also testified on direct examination that their quarrels were partly unavoidable and partly "on his part."

Appellee further testified that except for having seen appellant in her car at the place above mentioned, he did not know that she had "been out with any other man"; that she was jealous of his outside activities and questioned him about where he went; that he knew of "no dates" his wife had had before their separation and that he had been out with other women after the separation.

Appellee further testified that appellant made a trip to Memphis, Tennessee in 1956; that after learning where she was he talked with her by telephone ■ and urged her to return home. Appellant testified regarding this trip that she had visited her doctor in Bloomington, Indiana during the latter part of May, 1956 for treatment for her nerves, and he had advised that she should get away and he would tell appellee where she had gone; that she started driving from Bloomington and stopped in Memphis, Tennessee, where she stayed in the Peabody Hotel until her husband called; that she left early the next morning after her husband called and drove straight home without stopping. If there be any misconduct on the part of appellant up to this time, there was a condonation which followed on the part of the appellee. *Heckman* v. *Heckman* (1956), 235 Ind. 472, 134 N. E. 2d 695; *Hash* v. *Hash* (1945), 115 Ind. App. 437, 59 N. E. 2d 735.

Appellee testified on cross-examination that appellant had contributed as a housewife to their marriage and to his financial well-being.

A witness for appellee testified that she had read some notes or letters that some man told her had been written by plaintiff and she identified the handwriting on the residence affidavit filed with appellant's complaint for divorce and the notes to which she had previously referred as being the same. She did not testify as to what was in the notes or letters nor were they introduced into evidence during the trial.

The above is a summary of the entire evidence appearing in the record most favorable to appellee to support the allegations of appellee's cross-complaint for divorce.

As it readily appears, there is no evidence in the record showing that appellant told appellee that she no longer wanted to live with him and asked him to leave

or that she had threatened to stab appellee with any sharp instrument. The only testimony which could possibly have any bearing on this allegation was the statement by appellee that at the time appellant threw the cup of coffee at him she had a pair of manicure scissors in her hand. There is no evidence and none from which any inference might be drawn that appellant associated herself with any other man or men prior to the separation.

In our opinion, the evidence here is not sufficient to sustain the finding of the trial court that appellant was guilty of cruel and inhuman treatment against appellee. The decision of the trial court is therefore not supported by sufficient evidence and is contrary to law.

There is considerable amount of testimony concerning the misconduct of the appellee which we have no reason to review here.

There are other questions presented which are not likely to arise upon a retrial except that we point out that in adjusting property rights in a divorce proceeding, it is necessary for the court to hear testimony and take into consideration the financial conditions of both the parties. *Walker* v. *Walker* (1898), 150 Ind. 317, 50 N. E. 68; *Wallace* v. *Wallace* (1953), 123 Ind. App. 454, 110 N. E. 2d 514, 111 N. E. 2d 90; *Temme* v. *Temme* (1937), 103 Ind. App. 569, 9 N. E. 2d 111; *McHie* v. *McHie* (1938), 106 Ind. App. 152, 16 N. E. 2d 987.

The judgment is reversed and a new trial ordered.

## PETITION TO MODIFY MANDATE

ARTERBURN, C. J.—The appellant has filed a petition to modify the mandate in the opinion previously ren-

dered in this appeal. It is urged that the trial court should be directed to appoint a commissioner to reconvey real estate which was previously conveyed from wife to husband by a commissioner appointed pursuant to the trial court's judgment herein. We have reversed the trial court's judgment in its entirety and it has no validity ab initio. It would follow that any action of a commissioner based thereon is void and of no effect. The parties are in the same position as if no judgment had been rendered. If any of the property rights between the parties are not automatically restored to the status quo at the time of the trial, the trial court has such authority as may be necessary to effect that result. The petition is denied.

For the reason that title to real estate is here involved, the clerk of this court is directed to certify forthwith the opinion in this case (including this supplemental opinion) to the court below.

Jackson, Bobbitt, Landis and Achor, JJ., concur.

NOTE.—Reported in 166 N. E. 2d 329. Petition to modify mandate denied, 166 N. E. 2d 329.