SHIREMAN *v.* SHIREMAN.

[No. 19,626. Filed September 17, 1962.]

*James D. Williams,* of Corydon, for appellant.

*Robert W. Davis,* of Corydon, for appellee.

MYERS, J.—This was an action for divorce brought by appellee, Leroy Shireman, against appellant, Nellie L. Shireman. The only statutory ground alleged in the complaint was that during their married life appellant was guilty of cruel and inhuman treatment toward appellee. Appellant filed a cross-petition for separation from bed and board, alleging that during their married life appellee had been guilty of habitual cruelty toward her; that there was such constant strife between them as to make their living together intolerable, all without fault on her part; and that he was guilty of gross and wanton neglect of conjugal duty toward her for more than six months.

A Special Judge was selected to try the case, and the cause was submitted on November 29, 1960, and evidence was heard. The court found in favor of appellee on his complaint and against appellant on her cross-petition. Custody of a minor child was granted

to appellant, together with an order of support. Disposition of real and personal property was made. Consistent judgment was entered thereafter. A motion for new trial, based upon grounds that the decision of the court was not sustained by sufficient evidence and that the decision was contrary to law, was duly filed by appellant and subsequently overruled. This appeal followed.

The only question raised is whether there was sufficient evidence of cruel and inhuman treatment presented by appellee upon which the court could base a decree of divorce. Appellant claims that proof of such treatment was lacking to the extent that the court's decision is contrary to law and the decree therefore should be reversed.

The evidence most favorable to appellee reveals that he and appellant were married on June 21, 1941, and lived together as husband and wife until on or about February 24, 1960, at which time they separated. Their home was located on a small farm in Harrison County, Indiana, consisting of about forty-five acres. He was a carpenter and worked for a local contractor. They had two boys born of their marriage, aged thirteen and seventeen at the time of their separation.

On the night of February 21, 1960, a physician was called to the Shireman house to see appellant for an emotional upset. He had been treating her since 1951 for the crippling kind of rheumatoid arthritis. The reason for her emotional upset was because she claimed appellee had threatened to kill himself. He and his wife had been having a violent quarrel when the doctor arrived late in the evening. Appellee testified that at the time he had been "fussing" with his wife and that he was "mad, awful mad"; that when

the physician came in his wife told him that appellee was going to leave and that he was "sex crazy." This made appellee furious and he said: "I'm sick of this God-Damn marriage . . . it's enough to make a man blow his brains out." He claimed that was the only statement pertaining to taking his life that he made. Appellant testified that he had made other statements previously to her that he was going to take his life.

The doctor was at the house thirty minutes in all. When he left, he was of the opinion that appellee had suicidal tendencies and recommended psychiatric treatment in a mental hospital, preferably at a Veterans' Administration Hospital since appellee had served in World War II.

For some weeks prior to this, the parties had "spats" and had quarreled among themselves. Appellee was quoted by his wife as saying that: "One of these days I'll be living out—uh, I'll be staying—I'll be eating out in a restaurant and I'll be going out for some action." He threatened to beat her to death if she crossed his path. There never was any physical violence during these quarrels.

On February 22, 1960, appellant obtained a printed form entitled "Record of Inquiry as to the Mental Health of ———— of ———— County," "Prescribed as required by Ch. 359, Acts of 1957" (Burns' Ind. Stat., 1950 Replacement, §22-4701 et seq. [Supp.]). She inserted appellee's name and Harrison County in the blank spaces. She then filled out a part of this form entitled "Application for Investigation of Mental Health," which was addressed to the Judge of the Circuit or Superior Court of Harrison County. This part represented that appellee was mentally ill and suitable for treatment in a State Psychiatric Hospital and requested an examination of his condition

as the law provides. She wrote the answers to many questions concerning his personal, family and past history. As to his present illness, she said that he was "restless, could not sleep, threatened to take his life," "very much depressed, threatens to commit suicide," and that he required some restraint and possible seclusion. She signed an affidavit that these statements were true, which was sworn to before the Clerk of the Harrison Circuit Court. She also signed another affidavit which was typed by the Clerk and sworn to before him, which reads as follows:

> "I, Nellie Shireman, swear upon my oath that I think my husband, Leroy Shireman, is mentally ill and is dangerous to himself and his family and should be taken into custody by the Sheriff of Harrison County for safe keeping. I now direct the Clerk of the Harrison Circuit Court to issue a warrant to the Sheriff of Harrison County for the arrest of Leroy Shireman that he may be safe from harm."

This was attached to the printed form. Following this were other parts of the printed form, consisting of statements to be filled out by the attending physician and two medical examiners, and forms to be filled out by the Judge on commitment after hearing. Only the statement by the attending physician was filled in. It stated that appellee was "Depressed, suicidal thoughts, Describes urge to 'end it all,' 'go to graveyard,' etc., unable to rationalize." This was not signed personally by the physician who had seen appellee on February 21, 1960, but was signed in his name by his partner. It was not subscribed and sworn to as required. The doctor testified that he had his partner sign his name as it was his day off. There is no filing stamp or any mark to indicate that this document

was filed with the Clerk of the Harrison Circuit Court.

Around 4:00 p.m. on February 22, 1960, appellee was picked up by the Sheriff on a warrant which appellant admits in her brief was "inadvertently issued without proper authorization," placed under arrest and kept in a hospital over night. He was held in jail the next night and the following day was taken before the regular Judge of the Harrison Circuit Court who released him. Appellee did not return home thereafter. On March 19, 1960, he filed his complaint for divorce.

We may only comment with restrained indignation at the flagrant abuse of process revealed in this case whereby a man was deprived of his liberty and placed in custody contrary to all of the principles of Anglo-American law. The laws of the State of Indiana pertaining to the voluntary and involuntary admission of persons to psychiatric hospitals require notice and hearing before a court of competent jurisdiction and proper venue. Burns' Ind. Stat., 1950 Replacement, §22-4701 *et seq.* (Supp.), *supra.* The individual's right to due process of law is guaranteed and protected by these statutes. Here, appellant's application is not in due form, it was not filed with the Clerk of the Circuit Court, no notice was issued to appellee, an invalid warrant was issued, and there was no hearing as provided by law. There is no evidence that the Judge had any knowledge of these proceedings until after appellee was taken into custody. We feel it incumbent upon us to condemn such procedure as being illegal and contrary to all standards of law and justice.

Appellee testified that the one thing which turned him against his wife and was his single ground for divorce was the "paper" she filed against him, which

caused him to lose prestige and be embarrassed and the fact that it resulted in him being "locked up."

Appellant argues that this action on the part of appellant is not cruel and inhuman treatment so as to entitle appellee to a divorce. Authorities are cited in support of this argument from the courts of this state and those of other states. The factual situations involved therein are not comparable to the facts of the case at bar, as none of them concern the attempted commitment to a mental institution of one spouse by another. However, they do discuss and interpret cruel and inhuman treatment as a ground for divorce.

The older Indiana cases stated that divorce would not be granted on this ground unless there was such conduct by one of the spouses as would endanger, apparently or in fact, the physical safety or health of the other to a degree rendering it physically or mentally impracticable for the endangered party to discharge properly the duties imposed by the marriage. *Small* v. *Small* (1877), 57 Ind. 568.

More recent cases have modified this doctrine. In *Dickinson* v. *Dickinson* (1913), 54 Ind. App. 53, 57, 102 N. E. 389, 391, the following statement is made:

> "But the more modern and better considered cases hold that any unwarranted and unjustifiable conduct on the part of either the husband or the wife which causes the other spouse to endure suffering and distress to such a degree as to wholly destroy peace of mind, and make life with such spouse unbearable, and which completely destroys the real purpose and objects of matrimony, constitutes such treatment as will justify the granting of a decree of divorce on the ground of extreme cruelty, although no physical acts of cruelty may have been inflicted."

And in *Wingard* v. *Wingard* (1957), 128 Ind. App. 44, 46, 47, 145 N. E. 2d 733, 735, we said as follows:

"The record discloses no physical or personal violence by either party upon the other. But such is not imperative for a finding of cruel and inhuman treatment. In *Van Antwerp* v. *Van Antwerp* (1954), 125 Ind. App. 65, 69, 122 N. E. 2d 137, it is said:

" 'Cruel treatment, as contemplated by our divorce laws, is not limited to acts of physical violence, although there was in this case such evidence of violence. It is generally held that any unjustifiable conduct by one spouse toward the other which ultimately destroys the legitimate ends and objects of matrimony constitutes cruelty though no physical or personal violence may be inflicted or threatened.' "

See *Davis* v. *Davis* (1960), 130 Ind. App. 476, 161 N. E. 2d 619.

In the states of Maine, Nebraska, New York, Oregon and Pennsylvania it has been held or recognized that a spouse's procurement or attempted procurement of the commitment of the other spouse to a mental institution may, where made in bad faith, constitute grounds for divorce. Anno., 33 A. L. R. 2d 1234 and cases cited. If such efforts are made in good faith and in an honest endeavor to aid a spouse mistakenly believed to have been in need of such treatment, there is no ground for divorce. Anno., 33 A. L. R. 2d 1231 and cases cited. We believe this should be the law in Indiana.

There was conflict in the evidence concerning the suicidal statements made by appellee. Appellant testified that they were numerous. Appellee denied this. The doctor claimed to have known appellee for ten years, but, after talking with him for only thirty minutes, he permitted the application for a sanity inquest to be signed in his name on grounds that the appellee had suicidal tendencies. He admitted that

some of the reasons for doing so were based on what he had been told by appellant.

Appellant alleged in her cross-petition that there was such consistent strife between her and appellee as to render their living together intolerable. This statement was made under penalty of perjury. Yet she did not want an absolute divorce, but only separation from bed and board. She testified that she wanted to continue to live in their house and receive support from appellee. From these circumstances, together with evidence of the speed and manner in which she had appellee apprehended (it may be noted that she had this done on Washington's Birthday, a nationwide holiday, when most public offices are closed), the trial could have inferred that her actions were not in good faith. In *Heckman* v. *Heckman* (1956), 235 Ind. 472, 479, 134 N. E. 2d 695, 698, our Supreme Court said:

> "The trial court has before it, within its sight and hearing, the physical presence of the parties and oftimes their children. It hears their testimony, notes their actions and reactions, observes their sincerity, emotions, inflections and tones of voice, apparent state of health, and experiences the tenseness of the human drama enacted there within the confines of the court room. The appellate tribunal, on the other hand, has before it only the cold, written record. It sees only words, phrases, sentences, questions, answers, and exhibits. It is without the authority to weigh the evidence and determine only that the requisite principles of law have been observed and duly applied, and that justice has been fairly and impartially administered."

The mental anguish and turmoil suffered by appellee as a result of appellant's actions fall within

the definitions of cruel and inhuman treatment as set forth in the more recent decisions of our Supreme and Appellate Courts.

Judgment affirmed.

Cooper, P. J., and Ax and Ryan, JJ., concur.

NOTE.—Reported in 184 N. E. 2d 905.