**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 30 2012, 9:34 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BRYAN L. CIYOU**
Ciyou & Dixon, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**DARRELL M. AUXIER**
Jenner, Auxier & Pattison, LLP
Madison, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE THE MARRIAGE OF: | ) |
| | ) |
| KRISTEN LEACH, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| vs. | )  No. 39A01-1108-DR-332 |
| | ) |
| STEVEN LEACH, | ) |
| | ) |
| Appellee. | ) |

APPEAL FROM THE JEFFERSON CIRCUIT COURT
The Honorable W. Gregory Coy, Special Judge
Cause No. 39C01-0003-DR-128

**January 30, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Kristen Leach[1] ("Mother") appeals the trial court's August 2, 2011 order granting custody of the parties' minor children, Et. and Er., to Steven Leach ("Father"). Mother raises several issues, which we revise and restate as whether the court abused its discretion in granting Father's petition to modify custody of Et. and Er. We affirm.[2]

The relevant facts follow. The parties entered into a settlement agreement and the court entered a final decree of dissolution with respect to the marriage of the parties in July 2001. Pursuant to the settlement agreement, Mother was granted primary physical custody of the parties' two sons, Et., born on January 12, 1997, and Er., born on November 28, 2000. Father was ordered to pay child support to Mother. Father married his current wife, Kim Leach, in 2008. Father and Kim have one child together. Mother married her current husband, Chris Kozenski, in October 2007. Mother and Chris have one child together. Immediately prior to August 2009, Mother, Chris, Et., and Er. lived in Carrollton, Kentucky.

On August 4, 2009, Mother filed a Notice of Intent to Move indicating that she intended to move from Carrollton, Kentucky, to Prattville, Alabama, and that the reason for the move was that Chris's employer relocated his job. On August 28, 2009, Father filed a Verified Objection to Notice of Intent to Move and argued in part that it was his understanding that the parties' minor children did not want to move to Prattville, Alabama, that the children have extended family and have resided their entire lives in the

---

[1] The cause number shows Mother's name as Kristen Leach. The record shows that Mother was remarried in 2007 and that her name is now Kristen Kozenski.

[2] By separate order, we deny Mother's request for oral argument.

immediate area of Jefferson County, Indiana, and that Chris was not required to relocate to retain his position with his employer. On October 7, 2009, Father filed a Petition to Modify Custody, a Verified Motion for Custody Evaluation, and a Motion for In Camera Interview of Minor Children. On October 27, 2009, Mother filed a Petition to Modify Parenting Time requesting that Father's parenting time be modified to the Indiana Parenting Time Guidelines where distance is a factor.

On January 7, 2010, the court scheduled a hearing for February 25, 2010.[3] On January 15, 2010, Mother filed a Supplemental Notice of Intent to Move indicating that she intended to relocate her residence to Prattville, Alabama, on January 25, 2010. On January 20, 2010, Father filed a Motion for Temporary Restraining Order requesting an order prohibiting Mother from leaving Carrollton, Kentucky, with the parties' minor children until after the February 25, 2010 hearing, and that same day the court granted the motion and entered a temporary restraining order. On January 24, 2010, Mother filed a response to Father's motion for temporary restraining order, and on January 28, 2010,[4] the court vacated the temporary restraining order. Mother, Et., and Er. moved to Alabama on January 25, 2010.[5]

---

[3] The CCS shows an entry for August 28, 2009, reflecting a request for hearing was filed with the objection to notice of intent to move; an entry on September 3, 2009 setting a hearing for October 2, 2009; motions for continuance on September 24 and 29, 2009; an entry on October 7, 2009 showing a petition to modify custody and request for hearing were filed; and two entries on January 7, 2010, one of which indicated the court entered an order setting a hearing for February 25, 2010, and the other indicated that the court granted a continuance and reset the matter for February 25, 2010.

[4] In her response, Mother stated in part that Chris had already relocated to Prattville, Alabama, and that she "is moving on January 25, 2010 so that [her] family can be together and the children can start school and sports in Prattville, Alabama." Appellant's Appendix at 69.

[5] Father later testified that he was unaware that the temporary restraining order had been lifted or

On February 22, 2010, Father filed a Motion to Vacate Hearing requesting that the scheduled February 25, 2010 hearing be vacated, which the court granted on February 23, 2010. On September 13, 2010, Mother filed a Petition to Modify Parenting Time requesting that Father's parenting time be modified to that provided for in the guidelines where distance is a factor.

On February 1, 2011, Father filed a Verified Petition to Modify alleging that there had been a substantial change in circumstances and requesting primary physical custody of Et. and Er. On July 12, 2011, Mother filed a request for specific findings of facts and conclusions thereon.

On July 14, 2011, the court held a hearing and noted at the start of the hearing that "the matter is scheduled today for a hearing on a Verified Petition to Modify filed February 1st by [Father]." Transcript at 5. At the hearing, the parties presented evidence and testimony including the testimony of Father, Mother, Kim, and Chris. Father testified that he did not proceed with a hearing on his objection to Mother's relocation because he "felt as though they were able to move to Alabama from the Carrollton school [and] that chances are that they wouldn't be able to come back that quickly" and he "wanted to give them a chance to adapt and see if they liked it, give them to the end of the school year and see where they stood in the summer when they came home." Id. at 18.

---

that Mother and the children had moved until he spoke with his attorney and that he was not given an opportunity to say goodbye to the children prior to the move.

On July 29, 2011, Mother and Father submitted separate proposed findings of fact and conclusions of law. On August 2, 2011, the court entered an order containing findings of fact and conclusions of law which awarded Father primary physical custody of Et. and Er., granted Mother parenting time where distance is a factor, and ordered Mother to pay child support.

The sole issue is whether the trial court abused its discretion in granting Father's petition to modify custody of Et. and Er. We review custody modifications for an abuse of discretion and have a "preference for granting latitude and deference to our trial judges in family law matters." Kirk v. Kirk, 770 N.E.2d 304, 307 (Ind. 2002). "We set aside judgments only when they are clearly erroneous, and will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment." Id. The Indiana Supreme Court explained the reason for this deference in Kirk:

> While we are not able to say the trial judge could not have found otherwise than he did upon the evidence introduced below, this Court as a court of review has heretofore held by a long line of decisions that we are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence, or that he should have found its preponderance or the inferences therefrom to be different from what he did.

Id. (quoting Brickley v. Brickley, 247 Ind. 201, 204, 210 N.E.2d 850, 852 (1965)). Therefore, "[o]n appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal." Id. In the initial custody determination, both parents are presumed equally entitled to custody, but a petitioner seeking subsequent

modification bears the burden of demonstrating the existing custody should be altered. Id. We may neither reweigh the evidence nor judge the credibility of the witnesses. Fields v. Fields, 749 N.E.2d 100, 108 (Ind. Ct. App. 2001), trans. denied.

The trial court's findings were entered pursuant to Ind. Trial Rule 52(A) which prohibits a reviewing court on appeal from setting aside the trial court's judgment "unless clearly erroneous." Dunson v. Dunson, 769 N.E.2d 1120, 1123 (Ind. 2002). The court on appeal is to give due regard to the opportunity of the trial court to judge the credibility of the witnesses. Id. When a trial court has made special findings of fact, as it did in this case, its judgment is "clearly erroneous only if (i) its findings of fact do not support its conclusions of law or (ii) its conclusions of law do not support its judgment." Id. (citing Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996)).

The child custody modification statute provides that "[t]he court may not modify a child custody order unless: (1) the modification is in the best interests of the child; and (2) there is a substantial change in one (1) or more of the factors that the court may consider under [Ind. Code § 31-17-2-8] . . . ." Ind. Code § 31-17-2-21. Ind. Code § 31-17-2-8 lists the following factors:

(1)     The age and sex of the child.

(2)     The wishes of the child's parent or parents.

(3)     The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4)     The interaction and interrelationship of the child with:

(A)     the child's parent or parents;

6

(B)     the child's sibling; and

(C)     any other person who may significantly affect the child's best interests.

(5)     The child's adjustment to the child's:

(A)     home;

(B)     school; and

(C)     community.

(6)     The mental and physical health of all individuals involved.

(7)     Evidence of a pattern of domestic or family violence by either parent.

(8)     Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

Mother first presents arguments related to the impact of her previous relocation and Indiana's relocation statutes and then argues that the trial court's findings and judgment are clearly erroneous.

A.     <u>Mother's Arguments Related to the Relocation and the Indiana Relocation Statutes</u>

Mother appears to essentially argue on appeal that, regardless of the form by which Father filed his petition, i.e., by filing a petition for modification of custody or by filing an objection to her notice of relocation, Father is essentially challenging the relocation of Et. and Er., that Father already acquiesced to the relocation in February 2010, and that Indiana's relocation statutes preclude any belated relocation action by Father. Mother further appears to argue that Father may not request a modification of custody at the juncture at which he did so, at least where the modification is sought or

7

awarded in part due to the prior relocation of Mother and the children, because Father ultimately did not challenge the prior relocation to Alabama. Mother also raises other arguments on appeal such as whether the doctrine of estoppel precludes Father from seeking a custody modification since he acquiesced to the relocation. Father argues that Mother has waived her arguments on appeal related to the relocation statutes and estoppel by failing to raise the arguments at any point before the trial court.

The general rule in Indiana, which has been stated repeatedly by this court, is that matters or arguments not raised in the trial court may not be raised in an appellate court. M.S. v. C.S., 938 N.E.2d 278, 285 (Ind. Ct. App. 2010) (noting that a party waives appellate review of an issue or argument unless the party raised that issue or argument before the trial court and concluding that the appellant waived any claim that she was entitled to parenting time because she failed to raise the argument before the trial court); see Tesfamariam v. Woldenhaimanot, 956 N.E.2d 118, 123 (Ind. Ct. App. 2011) (observing that the general rule in Indiana is that matters not raised in the trial court may not be raised in an appellate court and finding that Mother waived her objections by failing to raise them at trial); Kentucky Nat. Ins. Co. v. Empire Fire and Marine Ins., Co., 919 N.E.2d 565, 597 (Ind. Ct. App. 2010) (noting that Empire Fire did not raise an argument related to estoppel and waiver in its arguments to the trial court and thus Empire Fire was not permitted to raise the argument on appeal) (citing Frances Slocum Bank and Trust Co. v. Estate of Martin, 666 N.E.2d 411, 413 (Ind. Ct. App. 1996) ("A party who raises an issue on appeal that was not raised in the trial court waives that issue."), trans. denied); GKC Ind. Theatres, Inc. v. Elk Retail Investors, LLC, 764 N.E.2d

8

647, 652 (Ind. Ct. App. 2002) ("A party generally waives appellate review of an issue or argument unless the party raised that issue or argument before the trial court.").

We observe that Mother, in her appellate briefs, does not point to the record to show, and our review of the record and transcript from the July 14, 2011 hearing does not disclose, that she presented any of her arguments to the trial court. For instance, Mother did not argue that Father's February 1, 2011 petition to modify custody constituted, as a practical matter, an objection to the relocation to Alabama, that it would be improper for the court to base its custody determination in whole or in part upon the prior relocation, or that the doctrine of estoppel prohibited Father from requesting a custody modification based in whole or in part upon the location or relocation of Mother, Et., and Er. We also note that, in her proposed findings of fact and conclusions of law submitted to the trial court, Mother set forth Ind. Code § 31-17-2-21 governing the modification of a child custody order and Ind. Code § 31-17-2-8 setting forth the factors to consider with respect to a custody order, and the proposed findings and conclusions did not include any reference to the relocation statutes found at Ind. Code §§ 31-17-2.2 or to the factors set forth in Ind. Code § 31-17-2.2-1 related to a relocation or a challenge to a relocation. To the extent Mother raises arguments on appeal which were not presented to the trial court, we conclude that those arguments are waived.

In addition, we note that Ind. Code §§ 31-17-2 governs actions for child custody and modification of child custody orders and that Ind. Code § 31-17-2-21, which is set forth above, governs the modification of a child custody order. Also as set forth above, a court must examine the factors set forth under Ind. Code § 31-17-2-8 in making its

9

modification determination. Ind. Code § 31-17-2.2-1, which applies to certain relocations, provides that when a relocating parent intends to relocate, the parent is required to file a notice of the parent's intent to do so with the clerk of the trial court and send a copy of the notice to the non-relocating parent. Ind. Code § 31-17-2.2-5 governs the filing of a motion by a non-relocating parent to seek an order to prevent the relocation of a child. On appeal, Mother does not point to authority for the proposition that a non-custodial parent may not request, or must wait for a certain period of time before requesting, a modification of custody of a child under Ind. Code § 31-17-2-21 where the child had been previously relocated with the custodial parent, whether or not the non-custodial or non-relocating parent had timely objected to the previous relocation under Ind. Code § 31-17-2.2-5. Further, Mother does not cite to authority in support of the assertion that the fact that the legislature has enacted specific statutory provisions regarding notice requirements in connection with relocations of a custodial parent and child necessarily means that a trial court may not consider the relocation or location of the custodial parent and child during subsequent modification proceedings. We do not find Mother's arguments that the statutes relating to relocation limit the trial court's ability to subsequently hear and modify a child custody order to be persuasive.

B. Modification of Custody

Mother next argues that the trial court's findings are clearly erroneous and that the August 2, 2011 order should be reversed. Mother argues that the court's findings "demonstrate no substantial change and appear to rely upon a standard of proof akin to the initial custody determination, which is gender neutral and has no presumption

favoring either parent." Appellant's Brief at 27. Mother appears to argue that it was improper for the court to rely upon "pre-relocation facts and the relocation itself" in awarding custody to Father. Id. at 28. Mother asserts that findings 44(4) and 46 of the court's order make it "clear that the sole basis for modification is moving to Alabama" and that "the issue the trial court found to constitute a substantial and continuing change was access to family." Id. at 29. Mother argues "that extended family alone should not be the legal tipping point for an initial custody determination" and that "[r]e-locating the Children for the sake of proximity to relatives tacitly ignores the constitutionally based preference that a parent, rather than a non-parent, have custody of his or her child where that parent has not been shown to be unfit." Id. at 31. Mother further argues that the trial court applied the wrong legal standard, that "[w]hat is not clear is what reliance, if any, the trial court had on the 'substantial continuing change' custody modification standard in formulating its findings" and that "[e]ven removing all relocation consideration from the legal analysis still leaves clearly erroneous Special Findings." Id. at 32-33.

Father argues that Mother has waived appellate review of the custody modification standard applied by the trial court by virtue of the invited error doctrine and that the evidence supports the court's findings and the findings support the court's modification of custody. Father argues that "[i]t is obvious that the trial court's custody modification was based on three factors" including the facts that (1) the boys' relocation to Alabama interfered with "the boys' strong affectionate relationship with their father, stepmother, grandparents, and other extended family," that "(2) Father is capable of providing the boys with a more stable life," and "(3) [t]he negative effect which the relocation has had

11

on [Er.'s] physical and mental health and the likelihood that Father would be more likely to recognize and deal with said problems." Appellee's Brief at 32. Father argues that Mother in her brief "wholly fails to set forth or comment on the trial court's findings of fact regarding stability and [Er.'s] mental and physical health" and that she "ignores said findings because they do not support her contention that the trial court's decision was based solely on the fact that the relocation interfered with the boys' relationships with extended family." Id. at 32 n.13. Father further argues that in the event the trial court applied a previous version of the custody modification statute requiring a "substantial and continuing" change in circumstances rather than the current statute requiring a "substantial" change in circumstances, the court did not err in doing so as the current statute imposes a less stringent standard for custody modification.

In her reply brief, Mother argues that "[t]he legal issue at hand, despite all of [Father's] efforts to obscure the issue, is 'Whether there was a substantial change in circumstances which occurred after relocation and the time of [Father's] Verified Petition to Modify physical custody filed on February 01, 2011?'" and that "[w]hat [Father] impermissibly argues is the impact of relocation, which should have been litigated by his objection." Appellant's Reply Brief at 15.

Before turning to the trial court's findings, we note that, to the extent Mother argues that it was improper for the court to rely upon "pre-relocation facts and the relocation itself" in awarding custody to Father, see Appellant's Brief at 28, and that the "legal issue . . . is [w]hether there was a substantial change in circumstances which occurred after relocation and the time of [Father's] Verified Petition to Modify physical

12

custody," Appellant's Reply Brief at 15, we observe that Ind. Code § 31-17-2-21(c) provides that "[t]he court shall not hear evidence on a matter occurring before the last custody proceeding between the parties unless the matter relates to a change in the factors relating to the best interests of the child as described by section 8[6] . . . ." The record reveals that Mother was awarded primary physical custody following the parties' divorce in July 2001, and as noted by Father the court's chronological case summary does not show that any custody proceedings occurred or that the court heard evidence related to custody prior to proceedings initiated by the Father's February 1, 2011 Verified Petition to Modify and concluded with the July 14, 2011 hearing.

The court's August 2, 2011 order concluded in part:

46.    The Court finds that based on the foregoing, [] there has been a substantial and continuing change in circumstances in that they moved from an area where they had lived for their entire lives to a new location; and that they moved from an area where they have extended family to an area where they have none, save for their mother, step-father and half brother.

47.    The Court finds it would be in the boys' best interests for the custody in this case to be modified and for [Father] to have primary physical custody of the boys.

48.    The Court finds that [Father] is capable of providing the boys with a home and more stable life, as he has not moved around as [Mother] has over the past several years; that he has a steady job; and that the boys will have extended family around them, including [Father's] parents and [Mother's] father, to be with them, attend their extracurricular activities, and assist [Father] in transporting them to and from activities if [Father] is unable to do so.

Appellant's Appendix at 25.

---

[6] Ind. Code § 31-17-2-8 sets forth the factors a court shall consider in determining custody as set forth above.

The court's order included the following findings:

11.    [Father] has regularly exercised his parenting time and has regularly attended his sons' sporting events. [Father] testified that he would forego his parenting time when the boys lived in Kentucky if they had some school or other activity.

12.    Both parties remarried in 2008. Father dated his present wife, Kim, for approximately 5 years before he married her.

13.    Subsequent to her marriage to Chris Kocenski [sic], [Mother] and the boys moved to Prattville, Alabama, in January, 2010.

14.    [Mother] and the boys moved frequently prior to her marriage to Chris. Since the divorce, [Et.] has attended at least four (4) different school districts and [Er.] has attended school in at least two (2) different school districts, not including the school they are currently attending in Alabama.

15.    [Father] has remained a resident of Jefferson County since the divorce; he did work for a time in New Castle[,] Indiana[,] but was still a Jefferson County resident.

16.    [Et.] and [Er.] had substantial contact with Kim during this time period and they have always had a positive and healthy relationship with her.

* * * * *

19.    [Mother] acknowledges that Kim is kind to [Et.] and [Er.] and that her sons are very fond of Kim.

20.    [Mother's] husband, Chris, has also been a concerned and dedicated stepparent to the boys. He has coached them in sports, gotten them involved in the Church and youth groups, taken them on vacations, and allowed them to participate in the birth of he and [Mother's] son.

21.    The Court finds that both parents are good parents capable of raising the boys and allowing them to have happy homes. The Court met privately with both boys and found that they speak highly of both their parents and both their stepparents, are polite, well spoken and generally appear to be happy and healthy.

14

22.   [Father] had extended family in the Jefferson County, Indiana area. [Father] is close to his parents and sees them on a nearly daily basis.

23.   The boys have always had contact with their paternal grandparents when they are with their Father, as well as [Father's] extended family.

24.   [Mother's] father, the boys' maternal grandfather, also lives nearby; [Father] appears to be on good terms with [Mother's] father and makes sure that the maternal grandfather is able to visit with the boys when they are with [Father].

* * * * *

26.   Chris's job requires him to change jobs periodically in order to realize career advancement.

27.   The possibility exists that Chris may have to transfer again before the boys finish school.

* * * * *

29.   [Father] has continued to exercise regular parenting time under the Indiana Parenting Time Guidelines since [Mother] and the boys moved to Alabama.

* * * * *

39.   There was testimony from both parties that at various times since the divorce, [Er.] has become distressed to the point of vomiting.

* * * * *

42.   [Father] and [Mother] do not get along even insofar as it relates to discussing pickup and dropoff arrangements for the boys; the Court finds this as an indicator that at various times, neither parent takes the boys' best interests into account, and that their intense dislike for one another (typical for divorced parents) overrides their desire to do right by, and what is best for, their sons (not typical for divorced parents). Nevertheless, the Court finds that both parents are loving, supportive and that the boys will likely prosper in whichever household they are placed.

15

43. The statute controlling modification of child custody orders is I.C. 31-17-2-21, which states as follows:

    (a) the court may not modify a child custody order unless:
        (1) the modification is in the best interests of the child; and
        (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 8, and if applicable, section 8.5 of this chapter.

    (b) In making its determination, the court shall consider the factors listed under section 8 of this chapter.

44. In considering the factors listed in I.C. 31-17-2-8, the Court finds as follows:

    (1) *The age and sex of the child*: [Et.] is aged [sic] fourteen (14) and [Er.] is ten(10).

    (2) *the wishes of the child's parents*: both parents here are desirous of having custody of the children.

    (3) *the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age*. From the Court's private conversation with the boys, the Court finds that the boys are accepting of their situation with their mother and would similarly accept being moved to their father's residence.

    (4) *the interaction and interrelationship of the child with: (A) the child's parent or parents; (B) the child's sibling; and [(C)] any other person who may significantly affect the child's best interests*. Here the most significant factor is that the children have more opportunity to interact with their extended family when back in Indiana. They have no extended family in Alabama.

    (5) *the child's adjustment to the child's: (A) home; (B) school; and [(C)] community*. The boys both adjust to new environments fairly well as evidenced by the fact that they have moved several time in the last few years and changed schools, and continue to do well and make new friends. The

16

Court finds that remaining in Alabama or moving back to Indiana would not negatively impact either boy.

(6) *the mental and physical health of all individuals involved.* The most significant factor is the mental health of [Er.], who has negative physical responses to his parents' situation, and has become physically ill on more than one occasion. As stated elsewhere herein, the Court is deeply concerned that neither parent has seen fit to obtain mental health counseling for [Er.] to deal with this very serious issue.

Id. at 20-24. The order provides that "[t]he parties shall have joint custody of their two minor children with [Father] having primary physical custody and [Mother] having parenting time pursuant to the Indiana Parenting Time Guidelines-parenting time when distance is a factor." Id. at 25.

To the extent Mother challenges the court's findings, we conclude that Mother requests that we reweigh the evidence admitted at the July 14, 2011 hearing and judge the credibility of the witnesses, which we cannot do. See Fields, 749 N.E.2d at 108. In addition, to the extent Mother asserts that the trial court's sole basis for awarding Father custody of Et. and Er. is the fact that she moved to Alabama, we note that the court's findings include a number of factors which were considered by the court in making its custody modification determination and that the court specifically addressed and based its judgment in part upon the interaction and interrelationship of the children with their parents and other persons which may affect the child's best interests and the mental and physical health of Er. in paragraph 44 of its findings. Also, the court entered findings regarding the fact that Chris's employment requires him to change locations periodically to realize advancement and the possibility exists that he may have to transfer again before

17

the children finish school. Further, the court awarded custody of Et. and Er. to Father, not a non-parent, and we do not find Mother's argument that the court's modification order or its findings related to the children's interrelationships with extended family members tacitly violates any legal preference that a parent rather than a non-parent have custody of their children to be compelling.

Based upon the court's findings set forth above and the remaining findings and conclusions, we cannot say, especially in light of our preference for granting latitude and deference to our trial court judges in family law matters, that the court abused its discretion in determining that Father demonstrated that custody modification is in the best interests of Et. and Er. and that there was a substantial change in one of the necessary factors or that the judgment granting Father's petition to modify custody is clearly erroneous.[7] See Walker v. Nelson, 911 N.E.2d 124, 129 (Ind. Ct. App. 2009) (holding that the trial court did not abuse its discretion when it modified custody and noting that, although any one factor may not necessarily warrant a change of custody, consideration of all the factors is sufficient to establish that modification is in the best interests of the child and a substantial change had taken place in the interaction and interrelationship of

---

[7] To the extent Mother points to paragraph 46 of the court's findings and argues that the court erred in reciting a "substantial continuing change" standard rather than a "substantial change" standard, see Appellant's Brief at 32-33, we observe that this court has noted that a prior version of Ind. Code § 31-17-2-21 required the trial court to find that "substantial and continuing" changes in circumstances rendered the existing order unreasonable but that in July 1994 the legislature amended the statute to require a showing of only a "substantial change" in circumstances to support a custody modification order and that "[t]hese changes evidence the legislature's intent to impose a less stringent standard for child custody modification." Hanks v. Arnold, 674 N.E.2d 1005, 1007 (Ind. Ct. App. 1996). Although the court found, in paragraph 46 of its order, that there "has been a substantial and continuing change," the court set forth the current text of Ind. Code § 31-17-2-21 in paragraph 43 of its order and we cannot say that the court's finding that there has been a substantial and continuing change constitutes an abuse of discretion or requires reversal under the circumstances.

the child with the child's parents, adjustment to his home and community, and the health of all of the individuals involved); <u>Barnett v. Barnett</u>, 447 N.E.2d 1172, 1175 (Ind. Ct. App. 1983) (holding that the trial court did not abuse its discretion in modifying custody considering a number of factors including the relative stability of the parents).

For the foregoing reasons, we affirm the trial court's August 2, 2011 order.

Affirmed.

MAY, J., and CRONE, J., concur.