## BRICKLEY *v.* BRICKLEY.

[No. 30,702. Filed October 18, 1965. Rehearing denied February 23, 1966.]

*William D. Ruckelshaus, Richard M. Orr, Ruckelshaus, Bobbitt & O'Connor,* and *Money, Orr & Bridwell,* of Indianapolis, for appellant.

*Robert C. Eardley, Eardley, McCormack & Duschene,* of Chicago, and *Richard M. Givan,* and *Bowen, Myers, Northam & Givan,* of Indianapolis, for appellee.

PER CURIAM.—This is an appeal from an order of the lower court granting a change of custody of the daughter of the parties from the appellant-father to the appellee-mother.

Appellant filed motion for new trial asserting the findings of the lower court were not sustained by sufficient evidence

and were contrary to law. The overruling of such motion is assigned as error on this appeal.

From the record it appears that on October 26, 1962, a divorce was granted by the lower court to appellee. By such decree custody of the four year old daughter of the parties was awarded to appellant with appellee being granted visitation privileges with such child of one week-end per month and two week-ends during the summer.

Subsequently on February 20, 1963, appellee filed petition to change the custody order which after a hearing was denied on April 26, 1963. Thereafter on June 12, 1963, appellee filed petition to modify the order as to visiting privileges with the result that the court after hearing evidence granted appellee on October 10, 1963, more liberal visitation privileges. No appeal was taken from such rulings.

On April 29, 1964, appellee filed the instant petition for change of custody from which this appeal stems. The lower court on May 25, 1964, after hearing evidence granted the change of custody of the daughter of the parties from appellant-father to appellee-mother.

The lower court's findings of facts supported by evidence were in substance to the following effect: The child was in the custody of the paternal grandmother from November 1962 until January 1963 and possibly until March 1963 in Bluffton, Indiana. Subsequent to such time successive housekeepers were hired by appellant (Dr. Brickley) who was a busy surgeon, to look after such child in his residence. Appellant admitted some difficulty in keeping housekeepers. Appellant's sister stayed at his home and took care of the child while appellant was actively seeking a new housekeeper. A Mrs. Titus was the first housekeeper hired by appellant. A Mrs. Price was hired as housekeeper shortly prior to the October 3, 1963 hearing on change of visitations, and stayed until sometime in February or March 1964 when she left to go to the assistance of her mother who had a heart attack.

During the period of Mrs. Price's absence appellant's mother and sister were each there part of the time.

It is of course the settled law that for a change of custody to be warranted from that previously ordered by the court there must be a change in conditions from the date of the last order, and the change must be of such a decisive character as to make the same necessary for the welfare and happiness of the child. *Adams* v. *Purtlebaugh* (1952), 230 Ind. 269, 274, 102 N. E. 2d 499, 501; *Morrison* v. *Morrison* (1960), 130 Ind. App. 270, 279, 164 N. E. 2d 113, 118; *Wible* v. *Wible* (1964), 245 Ind. 235, 239, 196 N. E. 2d 571, 573.

Although it is not pointed out by appellant in his briefs, it is true there were some references in the lower court's findings to a change in conditions since the date of the divorce decree. We believe, however, these recitals should be considered merely as surplusage as there were specific references in the findings to material changes of conditions supported by the evidence which on their face appeared to have occurred since the last prior adjudication in 1963. They were:

(1) Said child has now reached school age, and would be required to enter elementary school in the fall of 1964.

(2) As established by the testimony of Dr. Palmer, a psychiatrist, the child has symptoms of (a) anxiety complex, being torn between mother and father, and (b) a depression complex, all occurring while in custody of the defendant-father.

There were further findings as to a change in conditions as to the mother's (Marie S. Brickley's) mental and physical condition and drinking addiction, in that the preponderance of evidence was held to show on April 29, 1964 (Judge Funk's hearing) that her condition had improved and she no longer required treatment.

The court further found from the evidence that the home of the mother at Riverside, Illinois, which was in the resi-

204

dence of her parents and had been reported on by the Cook County Department of Public Aid, was a fit and proper place for said child; that said conditions and environment near the school and in the home where her half-brother also lived, were in the better interests of said child than her present environment where her father who was a busy surgeon was only able to see her a limited period of time and she was left to the association and control of changing housekeepers or the intermittent care of a paternal grandmother and aunt.

While we are not able to say the trial judge could not have found otherwise than he did upon the evidence introduced below, this Court as a court of review has heretofore held by a long line of decisions[1] that we are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence, or that he should have found its preponderance or the inferences therefrom to be different from what he did.

On appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal. See: *Daniels* v. *Indiana Trust Company* (1943), 222 Ind. 36, 48, 51 N. E. 2d 838, 843; *Kist* v. *Coughlin* (1944), 222 Ind. 639, 656, 57 N. E. 2d 199, 205; *Rush* v. *Hunziker* (1940), 216 Ind. 529, 536, 24 N. E. 2d 931, 934.

As we stated in *Heckman* v. *Heckman* (1956), 235 Ind. 472, 478, 134 N. E. 2d 695, 698:

". . . In considering the sufficiency of the evidence to sustain the finding of the court, a fragment, part or portion of the evidence is not plucked from the whole and appraised alone, but all the evidence, together with all the permissible and reasonable inferences deductible therefrom, is surveyed to determine the ultimate facts and circum-

1. See cases collected in 4 West's Ind. Digest, § 1010, p. 750.

stances established thereby favorable to the decision of the trial court. A reversal of a judgment predicated upon a finding results only when there exists no competent evidence to support such finding."

The record in this cause discloses probative evidence which supports the lower courts' findings. This Court is in no position to invade the province of the trier of the facts, nor to express an opinion as to what significance should be given certain testimony in the record.

The lower court's findings being sustained by sufficient evidence and not being contrary to law, the order of the lower court appealed from is now affirmed.

Myers, J., not participating; Achor, J., dissents.

## DISSENTING OPINION

ACHOR, J.—The majority opinion holds the evidence of this case to show sufficient change of circumstances to allow modification of the custody decree. As I interpret that same evidence, I am unable to agree. The majority opinion is based upon a rule which is well entrenched in appellate proceedings. It is a rule which I feel should be given substantial weight in the law of domestic relations and particularly emphasized when related to the law of child custody.

This rule in essence is: We (judges of an appellate court) are in a poor position to look at a cold transcript of the record and to weigh evidence and tell the trial judge who saw the witnesses, observed their demeanor, scrutinized the testimony as it came from the witness stand, that we are better able to understand the significance of that evidence. We are not in any position to invade the province of the trier of facts, not to express an opinion as to what evidence should be believed or disbelieved, nor to state what significance should be given to certain testimony in the record. This concept is a polestar of the American legal system. However, it cannot be controlling in all cases. While the judge in custody proceedings has wide latitude in evaluating the factors to be

considered in relation to one another, if the resulting judgment deviates greatly from policy and sound reasoning it becomes the duty of the higher court to correct such error. The controlling rules of law of this case, as I interpret it, are, in essence, set out below:

> "To justify a substantial modification there must be a change of circumstances or the discovery of material facts unknown to the court or to the party at the time of the original decree.
>
> ". . . there must be a showing of material, permanent, and substantial change in the circumstances or conditions of the parties, affecting the welfare of the children to a substantial or material extent, the two issues being closely interwined [sic]." Vol. 27B C. J. S. § 317(2), pp. 536, 540.
>
> "A change of the custody of the child must be based on conduct or changed circumstances of the parties subsequent to the previous order so vital as to make it necessary for the welfare and happiness of the child that there be a change of custody, and the right of the court to modify the custody provision of a decree by changing the custody from one party to another party depends on present conditions as they have developed and changed from those existing at the time of the original decree." 10 I. L. E. § 168 Divorce, p. 656.

In the case at bar the majority of this court acknowledged the requirement of a change of conditions from the date of the last order and held the change to be sufficient. The change of conditions which the majority of this court interpreted as being of such "a decisive character as to make the same necessary for the welfare and happiness of the child," are (1) that said child has now reached school age and would be required to enter elementary school in the fall of 1964; (2) that as established by the testimony of Dr. Palmer, a psychiatrist, the child has symptoms of (a) anxiety complex, being torn between mother and father, and (b) a depression complex, all occurring while in custody of the appellant father.

I consider the child's reaching school age as not an unexpected modification of circumstances, or a substantial change of condition. It was the result of the mere passage

of time. It is an event which the trial court realized and must have considered at the time it originally granted custody to the appellant father. There was no evidence in the record to show that the educational opportunities to be furnished by either parent would be either more beneficial or inferior to that furnished by the other. In fact, no evidence of this nature was ever presented.

The majority of this court states that the child was found to have (a) anxiety complex and (b) depression complex. This finding, however, is clearly based upon the mistaken understanding of the significance of the evidence upon which it is predicated. In Finding No. 7, the court stated:

"7. That since the granting of the divorce herein there has been a material change in conditions relative to the minor child in the following particulars:

. . .

b. . . . [I]n the hearing of April 29, 1964, the defendant's own witness, a psychiatrist, Dr. Palmer, established that the child now has symptoms of (1) anxiety complex, being torn between mother and father, and (2) a depression complex, all occurring while in custody of the defendant father."

The testimony of Dr. Pharman Palmer, on which this finding is based, is as follows:

"A. I found that Dina [sic] is making a very good adjustment in most ways to life. She has no significant emotional problem. She behaves within the range of normal for her age, but there are certain symptoms which I think would bear watching. These are anxiety. She has feelings of conflict and wants both her mother and father—

. . .

"A. She is torn between her mother and father and really hopes more than anything else for a reconciliation between them. She is angry about this. When she doesn't express her anger by fighting, as she does with dolls, and the dolls are people to children. She made her anger inside, toward herself, and she shows signs of depression."

The testimony of Dr. Palmer is, at most, a classic statement as to the tragic effect of divorce upon the children of broken homes, particularly under circumstances where both

parents have normal love and affection for their children but, instead of providing them with the love and security which they crave, engage in continual conflict for their affection and custody. The condition which is described in the above testimony is no more attributable to one parent than the other.

Thus, the only significant change or decisive change suggested by the majority opinion was of "the mother's mental and physical condition and drinking addiction in that the preponderance of evidence was held to show on April 29, 1964, that these conditions had improved and she no longer required treatment," although the majority failed to so mention that same hearing found Marie S. Brickley no longer is sexually promiscuous and that her habits of living have materially changed for the better.

Is not the majority then holding, at least by inference, that the mother, if not awarded the child in the original custody proceedings, being determined by the trial court to be an unfit or improper person to have custody of her natural born child, shall be awarded custody of the child upon showing herself to be a changed person and now a fit and proper person to have custody of said child? This is not the law in Indiana.

There is a consideration not mentioned by the majority opinion which I feel meritorious of consideration. Such children are, in a sense, wards of the court, and the court not only has the power *but it is its duty* to look after their welfare. *Duckworth* v. *Duckworth* (1932), 203 Ind. 276, 179 N. E. 773. Is not the court by allowing the appellee to take the child beyond the bounds of its jurisdiction placing itself in an inferior, if not impossible, position to look after the welfare of its ward? Granted, through comity the court maintains the power to further modify or enforce its decrees, but the capacity to fulfill these duties has been abrogated.

I feel the court should not sidestep the reasoning and principles so firmly established in Indiana law and which this court recently affirmed in the case of *Wible* v. *Wible*

(1964), 245 Ind. 235, 199 N. E. 2d 571, 572, 573-574,[1] wherein this court stated:

"The trial court in such matters as this must be concerned solely with the welfare of the children and not with the desires of the parents. . . .

. . .

There was no evidence nor finding that the appellant-mother was of bad moral character or that she was an unfit person to have the custody of the children. True, another judge heard the petition to modify. However, that incident emphasizes to us the importance of the principle that a modification of a permanent order of custody cannot be made without a showing of a substantial change in conditions which affect the welfare of the children. Adams v. Purtlebaugh (1951), 230 Ind. 269, 102 N. E. 2d 499; Morrison v. Morrison (1960), 130 Ind. App. 270, 164 N. E. 2d 113; Brown v. Beachler (1946), 224 Ind. 477, 68 N. E. 2d 915; White v. White (1938), 214 Ind. 405, 15 N. E. 2d 86.

In Adams v. Purtlebaugh, supra, 230 Ind. at pp. 274, 275, 102 N. E. 2d at pp. 501-502, approximately five to six months after the divorce fixing the permanent custody of the children, the trial court, on petition, changed the order, and stated:

'The cause relied upon in this petition to justify the modification of the decree must be that since the last order there has been a change in conditions *of such a decisive character* as to make it necessary for the welfare and happiness of the child that the requested change in care and custody be made. If such a vital change in conditions is not averred and not shown by the evidence and found by the court, no change in care and custody can be made. [Citing cases.] The action of the trial court reviewing the original custody judgment or that judgment as it had been amended is error. (Our italics.)

. . . . . . .

'In the instant petition there is no averment of a change in conditions occurring since the last hearing, of such character as to make it necessary that the care and custody be changed; and no evidence to support a finding that there had been any change in conditions during that period

---

1. The case of Wible v. Wible (1964) 245 Ind. 235, 196 N. E. 2d 571, had not officially been reported at the time of the trial of this case and, therefore, we assume that the court did not have the benefit of that opinion in arriving at his decision.

of any kind. It has been a fixed policy of the courts to arrange for custody of children of divorced parents on a basis of permanence to the extent that conditions will permit, providing of course for visiting periods for the parent not having custody. This is on the theory that a permanent residence is best for the welfare and happiness of the child.'

There is reason and logic in such a principle of law. The purpose of such a rule in the law is that the welfare of the children and their custody should not continually be changed, and left uncertain, thus creating instability in the living conditions of the children. It is their welfare—not that of the parents—that should be the primary concern of the trial court.

Were the principle with which we are concerned otherwise, the dissatisfied party could continually harass the other party and the courts with petitions to modify, securing a change of judge and have that particular person as judge again review the facts and the evidence, hoping that such new judge would have a different viewpoint and thus change the custody. . . ."

For the above stated reasons, I feel the judgment of the trial court should be reversed.

NOTE.—Reported in 210 N. E. 2d 850. Dissent in 211 N. E. 2d 183.