**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 26 2013, 8:48 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DEBRA S. ANDRY**
Paoli, Indiana

ATTORNEY FOR APPELLEE:

**MATTHEW J. McGOVERN**
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DAGMAR ENID BREEDEN,    )
        )
   Appellant-Respondent,    )
        )
     vs.    )   No. 13A01-1303-DR-131
        )
JAMES BREEDEN,    )
        )
   Appellee-Petitioner.    )

APPEAL FROM THE CRAWFORD CIRCUIT COURT
The Honorable Curtis Eskew, Special Judge
Cause No. 13C01-1103-DR-015

**September 26, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Dagmar Breeden appeals the trial court's modification of child custody in favor of James Breeden. We affirm.

## Issues

Dagmar raises two issues, which we revise and restate as:

    I.    whether the trial court properly excluded Dagmar and the child's psychologist from presenting evidence by telephone at the February 25, 2013 hearing;

    II.   whether the trial court properly awarded James custody of the parties' child; and

    III.  whether the trial court properly found Dagmar in contempt.

## Facts

Dagmar and James were married and had one child, J.M.B., who was born in November 2006. James filed a petition for dissolution in March 2011. On December 8, 2011, the trial court dissolved the marriage and took the issues of custody, child support, and the tax exemption under advisement. Dagmar lives in Puerto Rico with J.M.B., and James lives in Indiana. The trial court ultimately held that the parties would have joint legal custody of J.M.B., Dagmar would have primary physical custody, J.M.B. would reside with Dagmar during the school year, and James would have parenting time during summer break and two weeks of winter break.[1] The trial court ordered the parties to abide by the Indiana Parenting Time Guidelines regarding telephone contact. J.M.B. was

---

[1] Although the order was signed on August 11, 2012, the CCS indicates that the trial court entered its ruling on July 17, 2012.

allowed to remain with James until Dagmar was "released from the Crawford County Jail."[2] Appellant's App. p. 47. Upon her release in July 2012, Dagmar was allowed to retrieve J.M.B. and return to Puerto Rico with him.

On August 9, 2012, James filed a petition for a contempt citation, alleging that Dagmar had allowed him telephone contact with J.M.B. only two times in the past nine days. On August 24, 2012, the trial court approved an agreed order that allowed each parent unlimited and unrestricted telephone contact with J.M.B. when he is in the care of the other parent. However, on September 10, 2012, James informed the trial court that Dagmar had discontinued any and all contact between James and J.M.B. James alleged that Dagmar had made a false claim of child abuse against him, that she had obtained a restraining order in Puerto Rico, and that she was threatening him with arrest if he went to Puerto Rico. The alleged abuse apparently occurred while J.M.B. was visiting with James in Indiana in July 2012.

On September 14, 2012, Dagmar filed an emergency petition to suspend James's parenting time and telephone contact. Mother alleged that J.M.B. had reported abuse by James to J.M.B.'s psychologist, that she was instructed by the Puerto Rico "Department of Family" and the psychologist not to allow any contact between James and J.M.B. while the alleged abuse was investigated, and that she understood criminal charges against James were pending. Id. at 57.

---

[2] The reason for Dagmar's incarceration is not clear from the record.

3

As a result of James and Dagmar's motions, on September 17, 2012, the trial court set the matter for a hearing on October 15, 2012, and ordered the CASA to investigate and report to the trial court as soon as possible. On September 27, 2012, the trial court also issued an order noting that it had continuing jurisdiction over the parties and J.M.B. and ordering Dagmar to reinstate telephone contact. The trial court ordered Dagmar and Puerto Rican authorities to refrain from interfering with James's parenting time. Finally, the trial court noted: "If [Dagmar] fails to abide by the provisions of this Order, the Court may reconsider its rulings concerning custody of the minor child and the parenting time of the parties." Id. at 63.

At the October 15, 2012 hearing, the trial court talked with Dagmar by telephone and ordered her to continue to allow unlimited calls between James and J.M.B. The trial court noted that Dagmar was "already in Contempt" for not allowing calls and that it "may be forced to change custody" if she does not allow the calls. Id. at 7.

Despite the trial court's order, Dagmar refused to allow any telephone contact between James and J.M.B. On October 22, 2012, James notified the trial court of the continued lack of contact, and the trial court considered the filing to be a petition to hold Dagmar in contempt. The trial court set a hearing for December 17, 2012.

On November 2, 2012, Dagmar filed a petition to transfer the case to Puerto Rico. The trial court notified the parties that it would hear argument on the petition at the December 17, 2012 hearing. James responded to the petition to transfer and noted that Dagmar continued to refuse any contact between James and J.M.B., that Dagmar had moved without notifying James of her new address, that the abuse allegations were false,

4

that "Family services in Puerto Rico does not confirm any investigation," and that it was not in J.M.B.'s best interests to transfer the action to Puerto Rico. Id. at 75. James also requested that the trial court hold Dagmar in contempt for disobeying its order, that the trial court grant him primary physical custody of J.M.B., and that jurisdiction over matters of custody, parenting time, and support remain in Crawford County.

Dagmar's counsel filed a motion to reset the December 17, 2012 hearing due to counsel's conflict with the time, but the CCS does not indicate that the trial court ruled on the motion. Dagmar's counsel filed another motion to reset the hearing on December 17, 2012, or in the alternative, for Dagmar and her counsel to be available by telephone. The motion alleged that Dagmar was in Puerto Rico and was unable to attend the hearing in person. The trial court then denied the motion to continue the hearing, and Dagmar's counsel appeared, but Dagmar did not. At the hearing, the trial court found Dagmar in contempt for "her failure to allow the minor child to contact his father." Id. at 86. The trial court ordered Dagmar to allow regular telephone contact by January 31, 2013, or the trial court noted that it intended to "reconsider the placement of the child's custody." Id. The trial court denied Dagmar's petition to transfer the action and set the matter for another hearing on January 31, 2013.

James filed a motion for Dagmar to appear in person at the January 31, 2013 hearing and for her to bring J.M.B. The trial court granted James's motion. On January 29, 2013, Dagmar filed a motion to appear at the hearing by telephone, for J.M.B.'s psychologist to appear by telephone, and for the trial court to determine James's child support arrearage. Dagmar alleged that the psychologist now instructed her that

5

telephone contact between J.M.B. and James could resume, that telephone contact resumed on January 22, 2013, and that James owed $7050 in child support. The trial court denied Dagmar's request to appear by telephone.

On January 31, 2013, Dagmar filed a motion to reconsider her appearance by telephone. She alleged that she had fallen on January 28, 2013, and suffered head and neck injuries. At the January 31, 2013 hearing, the trial court took the matter under advisement because Dagmar had been allowing telephone contact. The trial court ordered Dagmar and J.M.B. to appear in person at a February 25, 2013 hearing.

On February 11, 2013, Dagmar filed another motion to transfer the action to Puerto Rico under the Uniform Child Custody Jurisdiction Act ("UCCJA"). In the motion, Dagmar alleged that, according to J.M.B.'s psychologist, "there should [be] no contact between [James] and the Child at this time." Id. at 106. Dagmar also filed a motion for change of judge. The trial court issued an order as follows: "Despite [Dagmar's] motion to change judge and motion to transfer, court will proceed with hearing set for 2/25/2013 with [Dagmar] and child ordered to be present at the hearing." Id. at 137.

On February 19, 2013, Dagmar filed a motion to allow the psychologist to appear at the hearing telephonically. Despite the allegations in her February 11, 2013 motion, Dagmar also alleged that the psychologist instructed her to allow telephone contact between J.M.B. and James and that such contact had been occurring since January 22, 2013.

6

On February 22, 2013, Dagmar filed a pro se motion again requesting that the action be transferred to Puerto Rico and that she be excused from attending the February 25, 2013 hearing. On February 25, 2013, James filed a response to Dagmar's petition to transfer.

At the February 25, 2013 hearing, Dagmar did not appear. "Both sides advised [the trial court] there had not been compliance with telephone contact between [James] and child." Id. at 156. The trial court found that, because of Dagmar's failure to permit contact between James and the child, "there has been a substantial change in circumstances that warrants a change in custody of the minor child." Id. The trial court transferred full custody, care, and control of J.M.B. to James. Dagmar now appeals.

**Analysis**

*I. Appearance by Telephone at February 25, 2013 Hearing*

Dagmar argues that the trial court erred by making a custody determination without considering evidence that was available telephonically from Dagmar and J.M.B.'s psychologist. The trial court set this matter for hearing on February 25, 2013, and ordered Dagmar and J.M.B. to appear at that time. On February 19, 2013, Dagmar filed a motion to allow the psychologist to appear at the February 25, 2013 hearing telephonically. However, Dagmar never filed a motion to appear by telephone at the February 25, 2013 hearing. Dagmar did file a motion for the trial court to "excuse [her] from attending the hearing." Appellant's App. p. 148.

7

Even if we assume that Dagmar properly requested that both she and the psychologist appear at the hearing telephonically, we conclude that her argument is waived. Indiana Evidence Rule 103(a) provides that:

> Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
>
> (1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or
>
> (2) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by a proper offer of proof, or was apparent from the context within which questions were asked.

"Failure to make an offer of proof results in waiver of an evidentiary issue." Dennerline v. Atterholt, 886 N.E.2d 582, 594 (Ind. Ct. App. 2008). Dagmar did not make an offer of proof at the February 25, 2013 hearing, and she makes no argument that her substantial rights were affected. Consequently, we conclude that she waived this argument.[3]

## II. Custody Modification

Dagmar argues that the trial court erred by modifying the custody of J.M.B. "We review custody modifications for abuse of discretion, with a 'preference for granting latitude and deference to our trial judges in family law matters.'" Kirk v. Kirk, 770 N.E.2d 304, 307 (Ind. 2002) (quoting In re Marriage of Richardson, 622 N.E.2d 178, 178

---

[3] Dagmar also argues that James did not petition the trial court for a change of custody. However, on November 2, 2012, James filed a response to Dagmar's petition to transfer jurisdiction and requested that the trial court hold Dagmar in contempt for disobeying its order, that the trial court grant him primary physical custody of J.M.B., and that jurisdiction over matters of custody, parenting time, and support remain in Crawford County.

(Ind. 1993)).  We set aside judgments only when they are clearly erroneous, and we will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment.  Id.  Our supreme court explained the reason for this deference in Brickley v. Brickley, 247 Ind. 201, 204, 210 N.E.2d 850, 852 (1965):

> While we are not able to say the trial judge could not have found otherwise than he did upon the evidence introduced below, this Court as a court of review has heretofore held by a long line of decisions that we are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence, or that he should have found its preponderance or the inferences therefrom to be different from what he did.

Id.  Therefore, "[o]n appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal."  Id.

Indiana Code Section 31-17-2-21(a) provides that a trial court may not modify a child custody order unless: "(1) the modification is in the best interests of the child; and (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 8 . . . ."  Indiana Code Section 31-17-2-8 provides that the trial court is to consider all relevant factors, including:

(1)     The age and sex of the child.

(2)     The wishes of the child's parent or parents.

(3)     The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4)    The interaction and interrelationship of the child with:

    (A)    the child's parent or parents;

    (B)    the child's sibling; and

    (C)    any other person who may significantly affect the child's best interests.

(5)    The child's adjustment to the child's:

    (A)    home;

    (B)    school; and

    (C)    community.

(6)    The mental and physical health of all individuals involved.

(7)    Evidence of a pattern of domestic or family violence by either parent.

(8)    Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

"The court shall not hear evidence on a matter occurring before the last custody proceeding between the parties unless the matter relates to a change in the factors relating to the best interests of the child as described by section 8 . . . ." Ind. Code § 31-17-2-21(c).

The trial court concluded that a substantial change had occurred as a result of Dagmar's "failure to maintain contact between [James] and the child." Appellant's App. p. 156. The record demonstrates that, despite the trial court's repeated orders, Dagmar failed to allow telephone contact between James, who resides in Indiana, and J.M.B., who

10

resided in Puerto Rico. Dagmar based this denial of contact on alleged abuse of J.M.B. by James in Indiana. Dagmar claimed that this alleged abuse was being investigated by the Department of Family and the police in Puerto Rico, but James found no evidence of such investigations in Puerto Rico or Indiana, and the trial court was entitled to believe there were none. The record demonstrates a substantial change in J.M.B.'s interaction and interrelationship with James.[4] Given these circumstances, we cannot say that the trial court erred by modifying custody of J.M.B.

### III. Contempt

Dagmar argues that the trial court violated her constitutional rights under Article 1, Section 12 of the Indiana Constitution when it found her in contempt. According to Dagmar, she was not given an opportunity to respond to or defend herself from James's contempt petition. Article 1, Section 12 of the Indiana Constitution provides: "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay." "Implicit in this right to bring or defend against a civil action is the right to present one's claim to the trial court." Sabo v. Sabo, 812 N.E.2d 238, 242 (Ind. Ct. App. 2004).

The trial court found Dagmar in contempt on October 15, 2012, and December 17, 2012. In her argument, Dagmar does not mention the December 17, 2012 finding.

---

[4] Dagmar argues that the trial court failed to consider the recommendations of the CASA. The trial court requested several updates/follow-up investigations from the CASA in this matter, and there is no indication that the trial court failed to consider the CASA's various reports. Further, the CASA's recommendations are merely one piece of evidence, and the trial court was entitled to weigh the recommendations against the other evidence here. On appeal, we cannot reweigh the evidence.

Further, Dagmar does not demonstrate how she was denied the right to present evidence on October 15, 2012. The record indicates that the trial court talked to Dagmar by telephone at that hearing. Dagmar has failed to demonstrate any violation of her rights under Article 1, Section 12 of the Indiana Constitution.[5]

**Conclusion**

Dagmar waived her argument regarding the presentation of evidence telephonically at the February 25, 2013 hearing. Further, she failed to demonstrate error in the trial court's modification of custody. Dagmar also failed to demonstrate that her rights under Article 1, Section 12 of the Indiana Constitution were violated. We affirm.

Affirmed.

CRONE, J., and PYLE, J., concur.

---

[5] James argues that we should strike Dagmar's argument on this issue because she did not identify the contempt order on her notice of appeal. We need not address James's argument because, regardless of the failure to identify the contempt order on the notice of appeal, Dagmar's argument fails.