**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JILL A. GONZALES**
Muncie, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL G. STONER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 38A02-1310-DR-879 |
| | ) | |
| AMY M. STONER (MCINTIRE), | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE JAY CIRCUIT COURT
The Honorable Jay L. Toney, Special Judge
Cause No. 38C01-0707-DR-072

**June 3, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Michael G. (Father) and Amy (Mother) Stoner were divorced pursuant to an Agreed Final Order In Dissolution that was entered on December 10, 2007. Two children were born to the marriage – A.S., who was born in 2003, and J.S., who was born in 2005. The parties agreed at the time that they would share joint legal custody of the children and that Mother would have primary physical custody, subject to reasonable parenting time as agreed upon by the parties. On August 1, 2013, Father filed a Verified Petition for Permanent Change of Custody and Modification of Support Accordingly. He appeals the denial of that petition, claiming that the evidence did not support the trial court's ruling and that ruling ignored Mother's failure to file a notice of intent to move.

We affirm.

After the parties separated, Mother was the primary caregiver for the children. For a period of time, the parties shared custody almost evenly. That changed when Father lost his job and found a new one, after which he was not able to be with the children as often. When the children entered school, Father exercised parenting time on alternating weekends and some evenings during the week. During that time, Father's mother (Grandmother) served as the children's primary caregiver while they were with Father. Father's father (Grandfather) also lived in Grandmother's home. Grandmother has significant health concerns, while Grandfather has a history of alcoholism and mental illness, although both of those were controlled at the time of the final hearing. The children's school was located just across the street from Grandmother's house. The children had attended that school, General Shanks Elementary school in Portland, Indiana their whole lives. Their routine was that the children

would walk to Grandmother's home after school each day, where Mother or her then-husband would pick them up approximately two hours later and take them home. On some of those days, Father, who lived just down the street, would go to Grandmother's house and spend time with the children after he got off work.

Although Mother moved on two occasions in the years following the divorce, the children continued to attend General Shanks because Mother continued to work in Portland. On February 1, 2012, Mother's job necessitated a move to Muncie, Indiana. But for a time at least, Father's parenting time with the children was unaffected. The children continued to attend General Shanks. Sometime during the summer of 2013, Mother advised Father that, beginning in the fall, the children would no longer attend General Shanks, and instead would attend a new school in Delaware County. On August 1, 2013, Father filed a Verified Petition For Immediate Hearing On Petitioner's Petition To Enjoin Respondent From Moving Without The Court's Approval.[1] At the same time, Father filed a Verified Petition For Permanent Change Of Custody And Modification Of Support Accordingly. In the latter petition, Father alleged that it was in the children's best interest to be in his sole custody. On August 7, 2013, Mother filed a Notice Of Relocation. In an accompanying affidavit, Mother acknowledged that "[d]ue to oversight" she had not filed the requisite notice of intent to relocate prior to the move. *Appellant's Appendix* and 55. She alleged, however, that Father had known of her relocation to Delaware County for approximately a year and a half, and had

---

[1] The title of this submission implies that Father had at some point filed a petition to enjoin Wife from moving. We find no such petition in the appellate materials submitted by Father. It appears that the petition upon which he sought a hearing was, in fact, the modification petition he filed on August 1, 2013.

3

not objected. On August 13, 2013, following a hearing, the court ruled that the children would continue to attend General Shanks pending a hearing on the petition to modify custody.

The hearing on the petition to modify was held on September 13, 2013, after which the trial court denied Father's petition. The court further ordered that the parties would continue to share joint legal custody and that Mother would continue to have primary physical custody, subject to Father's parenting-time rights. The court authorized Mother to withdraw the children from General Shanks and enroll them in an appropriate school near her home. Father appeals this ruling. Further facts will be provided where relevant.

As a preliminary matter, we note that Mother did not file an appellee's brief. When an appellee fails to submit a brief, we apply a less stringent standard of review with respect to the showing necessary to establish reversible error. *In re Paternity of S.C.,* 966 N.E.2d 143 (Ind. Ct. App. 2012), *trans. denied.* In such cases, we may reverse if the appellant establishes prima facie error, which is an error at first sight, on first appearance, or on the face of it. *Id.* Moreover, we will not undertake the burden of developing legal arguments on the appellee's behalf. *Id.*

Father contends the trial court erred in denying his petition for change of custody. We begin our analysis by noting Father's contention that our review should be for an abuse of discretion.[2] He is mistaken. The trial court entered specific findings of fact and conclusions

---

[2] "Where an issue presented on appeal is a question of the trial court's abuse of discretion, the appellate Court reviews the matter and has to find that the trial court's decision was an erroneous conclusion in judgment." *Appellant's Brief* at 5.

of law in support of its order denying Father's request for change of custody. Under these circumstances, we will not set aside findings or judgment unless they are clearly erroneous, "and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *D.C. v. J.A.C.*, 977 N.E.2d 951, 953 (Ind. 2012).

Pursuant to Ind. Code Ann. § 31-17-2.2-1 (West, Westlaw current with all legislation of the Second Regular Session of the 118th General Assembly (2014) with effective dates through May 1, 2014), Mother was required to file a notice of intent to relocate prior to moving her residence. In the affidavit accompanying her Notice of Relocation, Mother acknowledged that she had failed to do this. Nevertheless, for purposes of I.C. § 31-17-2-2.1, her Notice of Relocation was the functional equivalent of a notice of intent to relocate. I.C. § 31-17-2.2-1(b) provides that when a parent files a notice of intent to relocate, the non-relocating parent may object by either moving to modify custody or to prevent the child's relocation. When this is done, "[t]he relocating individual has the burden of proof that the proposed relocation is made in good faith and for a legitimate reason." I.C. §31-17-2.2-5(c) (West, Westlaw current with all legislation of the Second Regular Session of the 118th General Assembly (2014) with effective dates through May 1, 2014). In the event that the relocating parent demonstrates good faith and a legitimate reason to move, "the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child." *Id.* at subsection (b).

Mother presented evidence that "in order to maintain her employment she was required to transfer from Persimmon Ridge in Portland, Indiana to Liberty Village in Muncie,

5

Indiana due to reduction in staffing." *Appellant's Appendix* at 55. Clearly, her relocation to Delaware County was related to her employment. This satisfied her burden under I.C. § 31-17-2.2-5(c) to prove that the relocation was done in good faith and for a legitimate reason. At this point, the burden shifted to Father to prove that relocation was not in the children's best interests. *See* I.C. §31-17-2.2-5(b).

In determining the best interests of a child in a custody dispute such as this, a trial court must consider (1) the age and sex of the child, (2) the parent's wishes, (3) the child's wishes, (4) the relationship between child and parents, (5) the child's adjustment to the home, school, and community, (6) the mental and physical health of all individuals involved, (7) evidence of a pattern of domestic or family violence by either parent, and (8) evidence that the child has been cared for by a de facto custodian and any other person who may significantly affect the child's best interest. *See* I.C. § 31-17-2-8 (West, Westlaw current with all legislation of the Second Regular Session of the 118th General Assembly (2014) with effective dates through May 1, 2014).

Much evidence was presented on the question of the effect of relocation on the children and whether it was in their best interest. To summarize, Mother, Father, Grandmother, and Mother's ex-husband, among others, testified at the hearing. The evidence revealed that the children have good relationships with both of their parents. The children also have a close relationship with Grandmother, who has significant health concerns but claimed they did not impact her ability to care for the children. Grandfather has a history of alcoholism and mental illness and he suffered at least one serious psychotic break in the

6

recent past. Mother expressed concern about Father's alcohol consumption, and indeed there was evidence that Father was observed on multiple occasions consuming alcohol at times that he could have been involved with the children's athletic activities. There was also evidence of significant beer consumption at Father's home. There was testimony that Mother had taken on a greater role than Father in the areas of school, organized athletics, and tending to the children's health care. The children's schedules and the different responsibilities undertaken by the parties with respect to the timing of the visits and their routine with respect to school were set out previously in this opinion.

On the subject of school, the evidence revealed that the children had never attended any school but General Shanks, where A.S. was described as an A student, while J.S. was described as having experienced academic difficulties. This caused Mother to enroll him in a specialized reading program at General Shanks. Mother worked closely with school officials and teachers in conjunction with that program. Finally, the evidence revealed that, for Father, relocation would result in reduced contact with the children. It would also reduce the children's almost daily contact with Grandmother.

For her part, Mother acknowledged that if the children were permitted to relocate, there would be a time of adjustment for the children. She also acknowledged that their contact with Father and Grandmother would diminish, but offered that she would be willing to cooperate with extra visitation between the children and Father if the children so wished, so long as it did not involve overnight visits on school nights.

7

Father argues upon appeal that the evidence showed that, since the dissolution, his relationship with his children has changed greatly and that his bond with the children has grown substantially. *Appellant's Brief* at 3. He argues that the trial court undervalued or disregarded the negative effect relocation would have on the children's relationship with their schoolmates and with a half-sister that they saw while in Father's custody. In fact, Father claims that Mother failed to offer any evidence in support of her claim that it was in the best interest of the children for them to relocate. Rather, she "only entered into a mudslinging show of how [Father] had drank in the past and maybe because there were beer bottles in a recycle bin he was somehow endangering his children." *Id.* at 6. He complained that, in Mother's estimation, because he "chose not to go to a soccer game with [Mother] that somehow made to him unfit to be a parent". *Id.* at 6-7.

Finally, Father argues vigorously that the trial court failed to consider the fact that Mother relocated on at least two occasions, including the most recent one, without filing the statutory notice of intent to do so. *See* I.C. § 31-17-2.2-1. Indeed, the trial court failed to mention this in its findings and conclusions. It is not clear to us how this failure or oversight could be considered a factor in the best-interest assessment. Father seems to be arguing that the trial court's decision should have taken into account what he would no doubt characterize as Mother's misconduct. In other words, the court should have sanctioned Mother's failure to file by awarding primary physical custody to Father. We summarily reject this argument. Mother's failure to file the required notice was a separate question and played no part in the best-interest calculus in the present case.

Our Supreme Court indicated in *D.C. v. J.A.C.* that we do not apply a de novo standard of review in family law matters because we "are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence." *Id.* at 956-57 (quoting *Brickley v. Brickley*, 247 Ind. 201, 210 N.E.2d 850, 852 (1965)). The Court further explained:

> Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time. Thus enabled to access [sic] credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children.

*Id.* at 956 (quoting *Best v. Best* 941 N.E.2d 499, 502 (Ind. 2011)).

It is apparent that there were reasons on both sides of the question for either granting or denying Father's petition. It was the trial court's task to weigh the evidence presented and render judgment on that evidence. Indeed, Father's argument, reduced to its essence, is that the trial court did not give sufficient weight to evidence in his favor, and gave too much weight to evidence in Mother's favor ("[h]ad the trial court weighed the evidence properly, using the factors and the proper standard under I.C. 31-17-2-8 the custody outcome would have been different"). *Appellant's Brief* at 3. To undertake this sort of review would contravene our Supreme Court's directive in *D.C. v. J.A.C.* to afford our trial courts "a great deal of deference in family matters, including relocation and custody disputes." *Id.* at 957.

9

As its findings and conclusions reflect, the trial court made its decision after considering, among other things, the children's ages, their relationships with Mother, Father, Grandmother, and Grandfather, as well as the roles those persons have played in the children's lives to this point, and the impact of a move on the children's education. Although we may be able to reach a different conclusion than the trial court after considering this same evidence, this would require a reweighing of the evidence, which in turn would be inconsistent with the "highly deferential" standard of review emphasized by our Supreme Court in *D.C. v. J.A.C.* The trial court's findings in support of its decision permitting the children's relocation and denying Father's request to modify custody were both sufficient and supported by the evidence. Father has failed to establish a case of prima facie error. *See In re Paternity of S.C.,* 966 N.E.2d 143.

Judgment affirmed.


MATHIAS, J., and PYLE, J., concur.