## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 29 2020, 8:53 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Denise F. Hayden
Lacy Law Office, LLC
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Janet L. Manship
Pritzke & Davis, LLP
Greenfield, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Tammy J. Page,

*Appellant-Petitioner,*

v.

Darren Page,

*Appellee-Respondent.*

September 29, 2020

Court of Appeals Case No.
20A-DR-317

Appeal from the Hamilton
Superior Court

The Honorable David K. Najjar,
Judge

Trial Court Cause No.
29D05-1609-DR-8452

**Najam, Judge.**

## Statement of the Case

[1] Tammy J. Page ("Wife") appeals and Darren Page ("Husband") cross-appeals the trial court's dissolution of their marriage. Together, they raise nine issues

for our review, which we consolidate and restate as whether the court erred in its decree of dissolution. We affirm in all respects except that we reverse and remand with instructions for the court to correct the decree with respect to which party shall claim the Child as a dependent in which tax years.

## Facts and Procedural History

Husband and Wife were married in October of 2014, and had one child of the marriage, L.P. ("the Child"). In September of 2016, less than two years after their marriage, Wife filed her petition for dissolution. Following a multi-day final hearing, the trial court entered its decree of dissolution of the parties' marriage in December of 2019.

In its decree, the court entered detailed findings and conclusions in relevant part as follows:

> 5. Both parties are fit to be parents and can properly care for the [C]hild. Both parents clearly love the [C]hild.
>
> 6. [Wife] is seeking primary physical custody of the [C]hild. [Husband] is seeking equal parenting time.
>
> 7. A custody evaluation prepared by Randall Krupsaw, Ph.D. recommended [Wife] to have primary physical custody of the child until the child reached the age of 5, then to increase [Husband's] parenting time up to approximately 50%. Dr. Krupsaw also recommended the parties share joint legal custody of the child.

8.     Dr. Krupsaw also recommended the appointment of a parenting coordinator to assist the parties in implementing parenting time, communication, and other parenting matters, and for the parties to engage in counseling to improve their parenting and coparenting skills.

9.     The Court finds Dr. Krupsaw's evaluation and recommendations to be thorough and well taken. The Court also notes that Dr. Krupsaw's evaluation process took place over several months at the beginning of this case, culminating in his submission of the report to the Court in December of 2017.  The Court notes that much activity has taken place in this case since then and that activity, and the aging of this case in general, has not always reflected positively on either party.  This additional evidence, presented at the four days of the Final Hearing, have caused the Court to conclude that deviation from some of Dr. Krupsaw's recommendations is appropriate.

10.     [Wife] presented the testimony and written report of Sarah Szerlong, Ph.D. as a rebuttal of Dr. Krupsaw's report.  While the Court finds Dr. Szerlong's report and testimony note valid criticisms of Dr. Krupsaw's methods and findings, the Court does not find that these criticisms make much impact on Dr. Krupsaw's overall conclusions and recommendations. Furthermore, Dr. Szerlong's testimony and report do not sway the Court much at all in its determination of the best interests of the [C]hild with respect to custody and parenting time.

11.     [Wife] has testified and presented evidence to support her contentions that [Husband] poses a threat to the [C]hild and that his parenting time should be limited, or at least that he should not have more than the minimum parenting time afforded by the Indiana Parenting Time Guidelines.  The Court cannot find that the evidence, taken as a whole, supports this contention.  [Wife] has made much of a situation which resulted in [Husband] hitting his older son with a skateboard.  [Husband] does not deny

that this happened, but all the evidence suggests it was an unintentional act which did not affect the [C]hild of this marriage and is not part of a larger pattern of violence or harsh discipline.

12.     [Wife's] evidence and testimony regarding the dangers [Husband] may pose to the health and safety of the [C]hild are not supported by anything other than her own words. [Wife's] concerns that [Husband] will remove the [C]hild from the country and deprive her of contact with the [C]hild are unsupported by any evidence presented to the Court. [Wife] has restricted [Husband's] phone access with the [C]hild, his access to the [C]hild while the [C]hild is at preschool, and his ability to travel with the [C]hild. She has testified that additional counseling will not shake her belief that he is a danger to the [C]hild. Her belief is her reality, but the Court does not find that belief to be supported by anything else in the record. The Court cannot find that [Husband] is a danger to the [C]hild. The Court cannot find that [Husband's] time with the [C]hild should be restricted. Furthermore, the Court finds that [Wife's] belief about the threat [Husband] poses is an enormous obstacle to the parties' ability to co-parent the [C]hild.

13.     The Court finds that it is in the best interests of the [C]hild to spend as much time as possible with both parties. To that end, the Court will order the parties to share physical custody of the [C]hild equally.

14.     The parties shall implement a 2-2-3 schedule . . . with [Wife] having the first two days of that week and alternating thereafter.

* * *

21.     With respect to legal custody, the Court finds it is in the best interests of the [C]hild that [Husband] have sole legal custody.

22.     The Court finds that the parties have deep communication issues and that a situation involving the parties communicating with one another often over parenting decisions would not be in the best interests of the [C]hild at this time. The Court expresses hope that improved communication between the parties over time, perhaps working with parenting coordinators or counselors, may allow the parties to communicate with one another to a degree where joint legal custody is possible.

23.     As perhaps the prime example of the inability of the parties to jointly make decisions, and why the Court is awarding sole legal custody to [Husband], the Court would point to a situation which occurred over a blanket the [C]hild had left with [Wife] during [Husband's] parenting time. Once brought to his attention, [Husband] proposed a simple solution almost immediately. [Wife], however, continued the conversation over texts for multiple hours, raising irrelevant topics and elevating the tone and hostility of a conversation that started off very simply and matter of fact. Furthermore, [Wife] presented this text conversation as an exhibit to attempt to demonstrate her willingness to communicate and solve problems. The Court finds, however, that [Wife's] communication style created more problems that it solved in that conversation, that she failed to recognize the very simple solution proposed immediately by [Husband], and that upon reflection she still fails to recognize the conversation actually reflects very poor communication and co-parenting skills on her part.

24.     The Court will adopt Dr. Krupsaw's further recommendations for a parenting coordinator and counseling for the parties to improve their co-parenting skills. [Husband], in exercising sole legal custody, will still be required to

communicate with [Wife], to inform her of decisions he has made and important events happening in the [C]hild's life. A parenting coordinator and counseling can help both parties improve their communication skills and their ability to co-parent the [C]hild.

* * *

27. In exercising sole legal custody, [Husband] shall make decisions for the [C]hild on important matters concerning the [C]hild's health, education, and religious upbringing. Each party shall make day to day decisions for the care of the [C]hild while the [C]hild is in their care. [Husband] should discuss the important decisions with [Wife] to seek her input prior to making a decision, but the decision will be his alone. Additionally, both parties should have free and unfettered access to information from the [C]hild's school and medical providers and should communicate directly with the school or medical provider. Both parties may attend any and all school events open to parents and may attend any and all doctor visits or other medical or health care appointments.

* * *

29. Both parties are employed. [Wife] works for J.C. Hart and is paid a salary as well as commissions and/or bonuses. Although her commissions and bonuses are not guaranteed, she has always received them and has no expectation that she will not receive them in the future. Additionally, she receives a reduction in her housing expenses of approximately 25% through her employment. [Husband] works for Equian and is paid a salary.

30. The Court finds that [Wife's] commissions and bonuses, as well as the direct benefit she receives for her housing, should be included as her income for child support purposes.

31. The Court finds [Wife's] weekly gross income for child support purposes is $1,531.19 per week. [Husband's] gross income for child support purposes is $3,313.77 per week.

32. [Wife] shall pay for work related childcare for the [C]hild and shall receive the credit for such expense on the child support worksheet. Currently that expense is $227.50 per week.

33. [Husband] shall provide health insurance coverage for the [C]hild and shall receive the credit on the child support worksheet.

34. [Husband] shall be considered the custodial parent for child support purposes and shall provide the controlled expenses for the [C]hild, as those are generally defined in the Indiana Child Support Guidelines.

35. Pursuant to the child support worksheet attached, [Husband] shall pay to [Wife] the sum of $218.00 per week for the support of the [C]hild. . . .

* * *

37. The parties shall split the tax exemption and other tax benefits attributable to the [C]hild, with [Wife] claiming the [C]hild in 2019 and odd numbered years thereafter and [Husband] claiming the [C]hild in 2020 and even numbered years thereafter. . . .

* * *

40.    The Court declines to retroactively modify child support in this matter, in light of the totality of the evidence received by the Court.

41.    The Court does not find that [Husband] is in arrears on his prior child support obligation.  He was ordered, in the Preliminary Order, to pay $342.00 per week for the support of the [C]hild.  Through and including September 13, 2019, his obligation totaled $30,438.00.  The evidence is that he paid $31,044.00 in direct support payments . . . .  Therefore, the Court does not find that an arrearage exists . . . .

42.    The parties stipulated to the value of a number of items of property and evidence was presented with respect to the value of certain disputed items.  The Court finds, generally, that the presumption of an equal split of the marital estate has not been overcome.

43.    With respect to the stipulated values of items of property, the Court will accept those stipulations.  With respect to the disputed values of property, the Court finds that the values set forth [i]n [Husband's] exhibit DD shall be accepted as the value of the property at the time [Wife] filed for divorce.

44.    [Husband] has argued that he be awarded a share of the marital estate greater than 50%.  [Husband] cites the short duration of the marriage and the fact that most of the marital estate was acquired prior to the marriage.  [Wife] has requested an equal division of the marital estate but has also cited the unequal income earned by the parties and unequal earning potential of the parties as factors in her favor should the Court divide the marital estate unequally.  The Court is unconvinced that any property, except for college accounts or accounts and vehicles belonging to [Husband's prior-born] children, should be excluded from the marital estate.  Likewise, considering the

parties were in a relationship for many years prior to their marriage, and property was transferred freely between them during that time, the Court is unconvinced that an unequal division of marital property is improper. Therefore, the presumption should remain.

* * *

50.    . . . In order to effectuate an equal division of property, [Husband] shall pay to [Wife] the sum of $168,506.14 within 60 days of this Decree. [Wife's] counsel shall prepare any necessary Qualified Domestic Relations Order, or similar order, in order to transfer the equalization payment. [Husband] shall cooperate in all respects with the preparation of such order . . . .

* * *

53.    The Court finds that an award of attorney fees is proper. The Court finds that [Wife] has prolonged the litigation in this case substantially and without cause. The bulk of testimony and evidence received in this case concerned the custody of the parties' [C]hild and parenting time. [Wife] requested a custody evaluation. When the results of that evaluation were not in her favor, she obtained a critique of that evaluation and has dragged out a Final Hearing over four days scheduled over a span of seven months. This Court found, in January of 2018, that [Husband] did not present a danger to the [C]hild, yet [Wife] has persisted in that belief and has pursued litigation to that effect since the inception of this case. [Wife] has placed restrictions on [Husband's] parenting time both before and after the provisional hearing in January of 2018. While [Husband] has not sought to hold [Wife] in contempt of court, and the Court makes no finding that [Wife] has violated a court order, the Court does find that [Wife's] actions are unjustified and have unnecessarily prolonged litigation in this case. For these reasons, the Court

awards [Husband] the sum of $15,000.00 towards his attorney fees and litigation costs . . . .

Appellant's App. Vol. II at 28-39.  This appeal ensued.

# Discussion and Decision

[4]     Wife appeals and Husband cross-appeals from the trial court's decree of dissolution.  The decree includes findings of fact and conclusions thereon, which the court entered *sua sponte* following a multi-day final hearing.  As our Supreme Court has explained, in our review of such appeals we

> will "not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *D.C. v. J.A.C.*, 977 N.E.2d 951, 953 (Ind. 2012) (internal quotation and citations omitted).  Where a trial court enters findings *sua sponte*, the appellate court reviews issues covered by the findings with a two-tiered standard of review that asks whether the evidence supports the findings, and whether the findings support the judgment.  *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014) (citation omitted).  Any issue not covered by the findings is reviewed under the general judgment standard, meaning a reviewing court should affirm based on any legal theory supported by the evidence.  *Id.*

> Additionally, there is a well-established preference in Indiana "for granting latitude and deference to our trial judges in family law matters." *In re Marriage of Richardson*, 622 N.E.2d 178 (Ind. 1993).  Appellate courts "are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence." *Kirk v. Kirk*, 770

N.E.2d 304, 307 (Ind. 2002) (quoting *Brickley v. Brickley*, 247 Ind. 201, 204, 210 N.E.2d 850, 852 (1965)). "*On appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal.*" *Id.* "Appellate judges are not to reweigh the evidence nor reassess witness credibility, and the evidence should be viewed most favorably to the judgment." *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011) (citations omitted).

*Steele-Giri v. Steele*, 51 N.E.3d 119, 123-24 (Ind. 2016) (emphasis added).

[5] Most of the parties' arguments on appeal simply disregard our Supreme Court's instructions for how appellate review works in family law matters. Wife argues that the trial court erred when it did not follow Dr. Krupshaw's recommendations regarding primary physical custody and legal custody of the Child, even though Wife herself challenged Dr. Krupshaw's report in other aspects, and even though the court's conclusions here were based on evidence of Wife's poor communication skills with Husband. She also asserts that the trial court erred when it permitted Husband to exercise unsupervised parenting time with the Child because, according to her, Husband is a threat to the Child's well-being. Wife does not acknowledge the trial court's clear rejection of her evidence on this issue.

[6] Further, Wife complains about the court's order for her to pay $15,000 of Husband's attorney's fees and court costs, asserting that nothing she did here was procedurally or substantively out of bounds, but that also simply asks us to reweigh the facts and circumstances before the trial court. And she additionally asserts that the court erred when it did not impute to Husband's income

bonuses he had received in the past, even though Husband's past bonuses were from a different employer than his current employer, the last of those bonuses was in 2017, two years prior to the final hearing, and there was no testimony that such bonuses were expected to continue for Husband into the future. Similarly, on cross-appeal Husband asserts that the trial court erred when it applied the presumption that the marital estate should be divided equally, asserting that the marriage here was short in duration and the parties each brought their own assets into the marriage, even though the trial court did not find Husband's evidence on this point persuasive.

[7] Each of the foregoing arguments is nothing more than a request for this Court to reweigh the evidence, which we cannot do. Nothing about any of these arguments "positively require[s] the conclusion contended" by the advancing party. *Id.* (quoting *Kirk*, 770 N.E.2d at 307). We are not a court of original jurisdiction. We may not reweigh the evidence or judge the credibility of the witnesses. Thus, we decline to address these arguments further.

[8] We separately address Wife's contention that the court erred when it did not order Husband to pay child support from the date she filed the petition for dissolution until the entry of the preliminary order some fifteen months later.[1] In response to this issue, Husband asserts that the court had discretion on

---

[1] Between the entry of the preliminary order and the final decree of dissolution, the court found that Husband had no arrearage in child support and then, going forward, modified Husband's support order to $218 per week.

whether to retroactively apply a *modification* of Husband's support. But Wife's argument is not that the court failed to retroactively apply a modification; her argument is that the court failed to consider an award of support *at all* from the date of her petition for dissolution to the date of the preliminary order.

[9] In any event, we cannot say that the court erred on this issue. Upon the filing of her petition for dissolution, it was Wife's burden under Indiana Code Section 31-15-4-1(a) to move for an order of temporary support, the filing of which required the court to "immediately schedule a preliminary hearing" and then "determine (1) after the hearing; and (2) not later than twenty-one (21) days after the petition is filed" whether to order temporary support. Ind. Code §§ 31-15-4-5, -6 (2020).

[10] Here, Wife filed her petition for dissolution on September 27, 2016, along with her motion for preliminary relief. The court then set the hearing on the request for preliminary relief for October 18, 2016. However, on October 4, Wife moved to continue that hearing, which the court granted. Wife again moved to continue the preliminary hearing once more after that, and she either affirmatively consented to or at least did not object to several additional extensions of time entered by the court thereafter. And, during the preliminary hearing in January of 2018, after Husband pointed out that Wife "has not made a request for a hearing in regards to any kind of child support or provisional order" prior to the preliminary hearing, the court noted, "[a]nd the request for preliminary hearing has been pending for . . . a long time." Tr. Vol. II at 52-53.

[11] Construing the record most favorably to the trial court's judgment, as we must, the record suggests that the court considered and rejected Wife's request to make child support retroactive to the date of the petition for dissolution because Wife had been dilatory in pursuing, or otherwise had delayed the commencement of, the preliminary hearing on support. We cannot say that the court abused its discretion in that assessment. The Indiana Code provided Wife with an opportunity to have a temporary order on child support determined in a timeframe commensurate with the filing of the petition for dissolution. But, for her own reasons, Wife delayed seeking that relief. There is no trial court error on this issue.

[12] We also separately address Wife's argument that the decree of dissolution on the equalization payment was unclear as to whether a qualified domestic relations order would be required to effectuate that payment. Again, the court found:

> [Husband] shall pay to [Wife] the sum of $168,506.14[2] within 60 days of this Decree. [Wife's] counsel shall prepare any necessary Qualified Domestic Relations Order, or similar order, in order to transfer the equalization payment. [Husband] shall cooperate with the preparation of such order . . . .

Appellant's App. Vol. II at 37-38. We conclude that Wife's assertion on this issue is not supported by cogent reasoning. The decree of dissolution

---

[2] This amount was reduced by $15,000 to account for the amount of attorney's fees the court ordered Wife to pay to Husband.

unambiguously directs Husband to pay a sum certain by a date certain. If a qualified domestic relations order, or other order, is required to effectuate Husband's payment of that amount within that time, the parties are to cooperate to make that order happen. There is nothing unclear about the court's instructions, and we affirm its judgment.

[13] Finally, we address Husband's argument that the trial court erroneously allocated claiming the Child as a dependent for tax purposes to Wife for odd-numbered years and then to Husband for even-numbered years. Prior to the final hearing, the parties had stipulated to the court that Wife would claim Child in tax year 2018, that Husband would claim the Child in tax year 2019, and that they would then be free to argue at the final hearing how to proceed from there. Appellee's App. Vol. II at 2-3. The court accepted that stipulation. However, in its decree, the court ordered Wife to claim the Child in tax year 2019 and then for the parties to alternate claiming the Child each year thereafter.

[14] We agree with Husband that this appears to be an oversight by the trial court. In effect, the court ordered Wife to claim the Child in back-to-back years, although its decree states the court's intent for the parties to alternate years when claiming the Child. Reading the stipulation accepted by the court and the decree of dissolution together, we think the court intended to have Husband claim the child in the odd-numbered years—including 2019—and to have Wife claim the child in the even-numbered years. Accordingly, we reverse this aspect

and only this aspect of the court's decree of dissolution and remand with instructions for the court to correct the decree accordingly.[3]

[15] In sum, we affirm the trial court's decree of dissolution in all respects except the first year in which Husband shall claim the Child as a dependent on his taxes. On that issue, we agree with Husband that he shall claim the Child as his dependent in tax year 2019 and odd-numbered years thereafter and that Wife shall claim the Child in the even-numbered years thereafter.

[16] Affirmed in part and reversed and remanded in part.

Bradford, C.J., and Mathias, J., concur.

---

[3] Husband also requests appellate attorney's fees and costs. We deny that request.