## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 06 2019, 8:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nicholas J. Hursh
Shambaugh, Kast, Beck &
Williams, LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

Justin R. Wall
Wall Legal Services
Huntington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Terry Honeycutt,

*Appellant-Respondent,*

v.

Ashten Harmon,

*Appellee-Petitioner*

December 6, 2019

Court of Appeals Case No.
19A-JP-1516

Appeal from the Wabash Circuit
Court

The Honorable Robert R.
McCallen, III, Judge

Trial Court Cause No.
85C01-1608-JP-55

**Baker, Judge.**

[1] Terry Honeycutt (Father) appeals the trial court's order granting Ashten Harmon's (Mother) request to relocate A.H. (Child) to Florida, arguing that (1) the relocation was not made in good faith and there were no legitimate reasons supporting the relocation; and (2) relocation was not in Child's best interests. Finding no error, we affirm.

## Facts

[2] Child was born to Father and Mother, who have never married, on October 16, 2007. Mother has since married her current husband (Mother's Husband). Nine years later, on December 16, 2016, Father and Mother filed a stipulation order establishing paternity, support, payment of uninsured medical expenses, visitations, and custody of Child, which was later approved by the trial court. Pursuant to that stipulation order, Father and Mother agreed that Father and Mother would retain joint legal custody of Child; Father would have Sunday, Tuesday, and Thursday overnights with Child; Father and Mother would coordinate transportation and care for Child; and Father would not pay child support. *See generally* Appellant's App. Vol. II p. 10-11.

[3] On January 4, 2019, Mother filed a notice of intent to relocate to Fort Myers, Florida—roughly 1,200 miles away—by January 21, 2019. The notice stated that Child would relocate with Mother to Florida in June 2019 after Child completed the spring semester at his current school. Additionally, Mother proffered the following reasons why they would be relocating and why she filed with such short notice:

a. [Mother's Husband] was offered a partnership opportunity at a land surveying company based out of Bonita Springs, FL;

b. [Mother's Husband] was provided with a formal, written offer of employment, and accepted same, on January 3, 2019;

c. [Mother's Husband's] offer requires him to begin employment on February 4, 2019;

d. That the contract on [Mother's] home is ending on January 31, 2019 and [Mother] is unable to remain in the home and will be required to move her residence;

e. That [Mother] and [Mother's Husband] do not have the financial means to support the expenses of maintaining two different residences, even on a temporary basis; and

f. That [Mother's Husband] is the primary source of income and [Mother] will need to relocate with her husband.

*Id.* at 15-16. On January 9, 2019, Father filed an objection to the notice of relocation, a request for an emergency temporary order restraining Mother from relocating Child, and a motion to modify custody. The trial court summarily denied Father's request for an emergency temporary order because Child would not be relocated until June 2019.

[4] On April 10 and May 23, 2019, the trial court held a bifurcated evidentiary hearing on all pending motions, at which multiple individuals—including Mother, Father, and Mother's Husband—testified. After Mother and Father tendered final written arguments, on June 11, 2019, the trial court issued an order granting Mother's request to relocate Child to Florida and denying Father's motion to modify custody. The trial court found and held, in pertinent part, as follows:

## RELOCATION

[Mother] has to prove that the proposed relocation is made in good faith and for a legitimate reason. Despite the distance involved, [Mother] has met that burden.[fn3]

> -fn3—While the decision to move to Florida was made quickly, that does not dictate that it was not for a legitimate reason or done in bad faith. Further [Mother and Mother's Husband] had been thinking about such a move for some time.

[Mother's Husband] was offered a better job, with better benefits, a potential partnership and a work schedule that would allow him more time to spend with his family. However, he had to accept that job quickly. Additionally, [Mother] has obtained a better job with a work schedule that will likewise allow her to spend more time with [Mother's Husband] and her children. The Court thinks the financial circumstances of [Mother and Mother's Husband] are better in Florida, despite the debt they have taken on.

In addition, [Mother and Mother's Husband] were buying a home on contract in Indiana. Due to title problems, that deal collapsed. As a result, they had to find another home.

Further, [Mother's] future career plans are better accommodated living in Florida.[fn4] Clearly, [Mother and Mother's Husband] want to provide the best possible life for themselves and their children.

> -fn4—While she initially testified she wants to go to law school, she is now pursuing a paralegal certification. Both goals reflect that she is thinking about her future and the future of her family by pursuing opportunities to improve herself.

## [CHILD'S] BEST INTERESTS

Having found that [Mother] met her burden of proof, the burden shifts to [Father] to show that the proposed relocation is not in the best interests of [Child].

It is important to the Court that while [Child] is 11, paternity was not established until 2016. The issue of [Father's] role in [Child's] life, before paternity was established, is disputed. The Court believes [Mother] has been [Child's] primary caregiver (both emotionally and financially) for the majority of [Child's] life. [Father] has certainly been involved, but not so much in a parental role. The Court finds his involvement prior to the establishment of paternity was more of a caretaker/daycare provider, than father. After paternity was established, [Father's] involvement with [Child] improved. However, his involvement has still not been substantial and he has not even exercised all of the parenting time the parties agreed to.[fn5] Further, while he and [Mother] agreed he would not pay child support, he has done little, financially, to assist [Mother] in raising [Child].

> -fn5—[Mother] and [Father] agreed to a parenting time plan for [Father] that gave him more time with [Child] than would have occurred under the Indiana Parenting Time Guidelines. That agreement was made an Order of the Court. That reflects that [Mother] recognized the important role [Father] should play in [Child's] life as his father.

The Court recognizes that [Father's] contact with [Child] will be diminished by the relocation because they see each other frequently. However, the Court believes that [Mother and Mother's Husband] will do their best to minimize that by frequent trips back to Wabash. Additionally, in this day and age, the ability for communication and even face to face contact between [Father] and [Child] can likewise lessen the blow. As addressed below, the Court will deviate from the child support guidelines to provide [Father] more income to engage in parenting where distance is a factor.

The Court also has serious reservations about what type of relationship [Father] would accommodate between [Child], [Mother], and [Mother's] extended family if he had primary physical custody. That does not seem to be a priority of [Father's]; whereas, [Mother's] actions reflect a willingness and desire to facilitate contact between [Child], [Father], and [Father's] extended family.

***

Undoubtedly, [Father], his mother, and their extended family are important to [Child] and vice versa. However, separating [Child] from his mother is not in [Child's] best interests.[fn6]

> -fn6—The Court is troubled that [Mother] testified she is relocating to Florida regardless of the Court's decision. However, the Court believes she never imagined the Court would deny her relocation or not allow [Child] to move with her. While that was risky, in the end, her belief was right. It would not be appropriate for the Court to "punish" her arrogance by making a decision that would not be in [Child's] best interest.

The Court believes [Mother] will do all that she can to promote [Child's] contact with all of his family, on both sides.

[Mother] desires to improve her lot in life and take advantage of opportunities available to her. While her plans may change from time to time, the reasons for those changes are thoughtful and reasonable. She will take full advantage of any new opportunities to enrich [Child's] life. [Mother and Mother's Husband] are good role models for [Child]. They have researched the schools [Child] . . . will attend and they sincerely believe they are good.

[Father] does not appear motivated to achieve his full potential. Instead, he is content living with his mother, in her house.

[Father] has not met his burden of proof. [Mother's] request to relocate with [Child] to Florida is granted.

*Id.* at 23-26 (footnotes in original). Father now appeals.

# Discussion and Decision

[5] On appeal, Father argues that the trial court erred when it granted Mother's request to relocate with Child to Florida, contending that (1) the relocation was

not made in good faith and there were no legitimate reasons supporting the relocation; and (2) relocation was not in Child's best interests.

### *Standard of Review*

[6] Our standard of review for these cases is well settled:

> [W]hen reviewing the specific findings and conclusions thereon, we must first determine whether the record supports the factual findings, and then whether the findings support the judgment. On appeal, we will not set aside the findings or judgment unless they are clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. We therefore consider only the evidence favorable to the judgment and the reasonable inferences flowing therefrom, and we will neither reweigh the evidence nor assess witness credibility. A judgment is clearly erroneous when there is no evidence to support the findings, the findings do not support the judgment, or the trial court applies the wrong legal standard to properly found facts.

*M.S. v. C.S.*, 938 N.E.2d 278, 281-82 (Ind. Ct. App. 2010) (internal citations and quotations omitted); *see also* Ind. Trial Rule 52(A).

[7] Furthermore:

> [T]here is a well-established preference in Indiana "for granting latitude and deference to our trial judges in family law matters." *In re Marriage of Richardson*, 622 N.E.2d 178 (Ind. 1993). Appellate courts "are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence." *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002) (quoting *Brickely v. Brickely*, 247 Ind. 201, 204, 210 N.E.2d 850, 852 (1965)). "On appeal it is not enough that the evidence might support some other conclusion, but it must

positively require the conclusion contended for by appellant before there is a basis for reversal." *Id.* "Appellate judges are not to reweigh the evidence nor reassess witness credibility, and the evidence should be viewed most favorably to the judgment." *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011) (citations omitted).

*Steele-Giri v. Steele*, 51 N.E.3d 119, 124 (Ind. 2016).

### *Good Faith and Legitimate Reasons*

[8] After a relocating parent files a notice of relocation, the nonrelocating parent may object and the trial court shall hold an evidentiary hearing to rule on that objection. Ind. Code § 31-17-2.2-5(a)-(b).[1] First, "[t]he relocating individual has the burden of proof that the proposed relocation is made in good faith and for a legitimate reason." I.C. § 31-17-2.2-5(c). The trial court concluded that Mother had met that burden by showing that her and her family's financial circumstances would be improved by moving to Florida. Father disputes these findings and argues that Mother's contradictory testimony demonstrates that her reasons for relocating were not legitimate and the relocation was not made in good faith.

[9] In defining potential "good faith and legitimate reasons" for a parent and child to relocate, this Court has held that "it is common in our society that people move to live near family members, for financial reasons, or to obtain or

---

[1] Throughout this opinion, we are citing the version of the relocation statute that was in effect at the time Mother first filed the notice of relocation. This statute has since been amended, and the latest version went into effect on July 1, 2019.

maintain employment." *T.L. v. J.L.*, 950 N.E.2d 779, 787-88 (Ind. Ct. App. 2011). And so, "[w]e infer that these and similar reasons . . . are what the legislature intended in requiring that relocation be for 'legitimate' and 'good faith' reasons." *Id.* at 788.

[10] Here, the trial court concluded that Mother and Mother's Husband were attempting to better their lives and economic situation by relocating to Florida. Mother's Husband attained a more secure job with greater pay and benefits, and Mother was seeking to further her education through either a part-time law school program or a paralegal certification program. Furthermore, their housing contract for a property in Wabash had fallen through, but they were able to obtain housing in Florida if they immediately relocated. In other words, the trial court found that Mother was relocating with Child to obtain better employment, to increase her income, and to keep her immediate family together.

[11] We hold that the trial court did not err in making these findings and then concluding that these were legitimate reasons and the relocation was made in good faith. Even if Mother contradicted herself at the evidentiary hearing, it was ultimately the trial court's decision to weigh her evidence against Father's and to determine whether Mother's statements were credible. Most of Father's argument is comprised of a request that we reweigh the evidence in his favor, which we may not do. As previously stated, we defer heavily to the trial court's findings and conclusions in matters of custody, relocation, divorce, and other family law disputes because the trial court gets to examine the witnesses and all

the evidence firsthand. Nothing in this record leads us to second-guess the trial court's findings and conclusions.

[12] Therefore, we conclude that the trial court did not err in finding that Mother's financial circumstances and her desire to obtain better housing and to live with her husband and Child in one location were legitimate reasons causing a good faith relocation. Thus, Mother has met her burden of proof.

### *Child's Best Interests*

[13] Next, "[i]f the relocating individual meets the burden of proof under subsection (c), the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child." I.C. § 31-17-2.2-5(d).

[14] Pursuant to Indiana Code section 31-17-2.2-1(b),[2] trial courts shall take the following into consideration when determining whether relocation is in the child's best interests:

> (1) The distance involved in the proposed change of residence.
>
> (2) The hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation.
>
> (3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties.

---

[2] Similar to our explanation in footnote 5, we are citing the version of this statute that was in effect at the time Mother filed the notice of relocation.

(4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.

(5) The reasons provided by the:

(A) relocating individual seeking relocation; and

(B) nonrelocating parent for opposing the relocation of the child.

(6) Other factors affecting the best interest of the child.

[15] In its order, the trial court focused primarily on the role that Father played in Child's life. The trial court found that Mother has been "[Child's] primary caregiver (both emotionally and financially) for the majority of [Child's] life." Appellant's App. Vol. II p. 24. Additionally, the trial court found that Father has not been nearly as involved, serving less in a parental role and more in the role of "caretaker/daycare provider[.]" *Id.* Further, Father neglected to establish paternity of Child until 2016 (after Child was already nine years old), did not pay much, if anything, in the way of child support, and did not take advantage of the full range of parenting time he was allotted pursuant to the trial court's December 16, 2016, stipulation order.

[16] Every step of the way, Mother has been loving and caring towards Child and accommodating to Father's desires to be a present parent. Even after Mother decided to relocate to Florida with Mother's Husband to get better housing, education, and employment, the trial court still found that "[Mother's] actions reflect a willingness and desire to facilitate contact between [Child], [Father],

and [Father's] extended family." *Id.* at 25. In other words, the trial court concluded that given Mother's greater maturity, willingness to comprise, and overall responsibility as primary caregiver to Child, it is in Child's best interests to relocate with Mother and Mother's Husband to Florida.

[17] Based on the evidence in the record and the trial court's findings, we hold that the trial court did not err in concluding that Mother's decision to relocate Child to Florida was in Child's best interests. Once again, any argument by Father that we reconsider witnesses, financial figures, aspects of his emotional relationship with Child, or other evidence amounts to a request that we reweigh the evidence, which we may not do. Though we do not dispute the earnestness of Father's attempts to maintain closer physical proximity to Child, we are not free to second-guess the trial court's judgment based on disputed evidence that it has already thoughtfully reviewed and weighed.

[18] The judgment of the trial court is affirmed.

Riley, J., and Brown, J., concur.